ANN W. TURNER, plaintiff in error *vs.* JOSEPH C. THOMPSON, defendant in error.

1. The principle of the common law, that the right to the easement of light and air passing over another's land through ancient windows, may be acquired by possession and use, is not applicable to this country, and is rejected by the current of American authority.

2. Where an executrix sold a half lot of land, with a tenement thereon having windows opening upon the other half lot, and bought the other half herself at the same sale, she will be estopped from obstructing the passage of light and air through such windows, if those windows were necessary to the admission of sufficient light and air for the reasonable enjoyment of the tenement which she sold; *aliter*, if sufficient light and air can be derived from other windows opened, or which could conveniently be opened, elsewhere in the tenement to make the rooms reasonably useful and enjoyable.

3. In dividing the lot between the executrix and the purchaser, there being no dividing fence at the time of the sale, regard should be had to the outbuildings in the rear of the mansion bought by the purchaser, and if the line which his deed calls for divides the lot substantially between his half and that of the executrix, and includes the outbuildings in his rear in his half, and those in the rear of the purchase of the executrix in her half, and the jury find such to be the true line, it should stand, and any obstructions or fences within the purchaser's side of such line, erected by the executrix, should be removed.

4. As the decree of the court perpetually enjoins the executrix from obstructing the rights of the purchaser, without regard to the nature or location of the obstructions, or the necessity of the windows to the purchaser's tenement to insure the reasonable use thereof or of the rooms lighted by those windows, and as the evidence does not show their necessity, and the jury did not pass thereon, a new trial is granted.

Easements.    Estoppel.    Equity.    Before Judge HARRIS. Chatham Superior Court.    May Term, 1876.

Reported in the opinion.

JOHN M. GUERARD, for plaintiff in error.

A. P. ADAMS, for defendant.

JACKSON, Judge.

Mrs. Turner, as executrix of her husband's will, sold

a half lot in Savannah, on which the mansion-house stood, to Thompson, or rather to the vendor of Thompson, and at the same sale bought herself the adjoining half lot. The testator, Turner, had owned the whole lot for many years; he had built on the half lot sold to Thompson, and erected outhouses in its immediate rear; the other half lot, which the executrix bought, had been used as a shrubbery and flower garden, and other outbuildings were in its immediate rear, also erected by testator; there had been no dividing fence on the lot, separating it into two half lots, in testator's lifetime, nor at the date of the sale; the tenement, or mansion-house, had some windows opening upon the garden at the date of the sale, and which had been there all the time testator occupied the lot, more than twenty years; Mrs. Turner had her purchase of the garden half lot ratified by all the legatees of testator, and thus she and Thompson were both purchasers at the sale of the lot, and held under the same title. Sometime after the purchase, Mrs. Turner put up a high planking, or wooden obstruction within a few inches of Thompson's house, which obstructed to some extent the light and air entering at these old windows, and ran a line of fence dividing the lot so as to cut into the outbuildings of Thompson some eleven inches. This line was an exact division of the lot, if it ought to be cut in two according to the old lines which divided it from adjoining tenements and lots, separated by old palings and houses; but it was not a correct division, according to the map of the city of Savannah, nor was it correct according to the outbuildings before mentioned in rear of the two half lots, nor according to a well of water dug on what was regarded as the dividing line to be afterwards used by occupants of both half lots in case of division and sale, nor according to the descriptive words in Thompson's deed. But another line nearer the garden lot, and marked by the city surveyor, was the true line, according to these last mentioned tests.

Thompson filed a bill in equity against Mrs. Turner to compel the removal of these obstructions to the light of his

windows, and to remove this fence from off his land and put it where the true line was; and on the trial of the cause the foregoing facts were developed, and it was further proved that the obstructions were unsightly and injured Thompson's property; and on the other hand it was proved that refuse and slops were thrown from these windows by the occupants of Thompson's house upon Mrs. Turner's garden, injuring her shrubs, and causing her frequently to be put to extra labor and expense in cleaning up; and also that her privacy was very much interrupted in her garden, and she had been accosted rudely when in the garden by people from the windows.

Under the charge of the court the jury found that the line located by the city surveyor as the true line, which divided the lot substantially equally between the contestants, and gave to each half lot its appropriate rear buildings and ran through the centre of the wall, was the true line, and that the fence be accordingly moved on it; and further, that the obstructions were a nuisance and should be torn down. Whereupon the chancellor decreed accordingly, and that the defendant, Mrs. Turner, be perpetually enjoined from ever obstructing the light and air through these windows; to which decree, on a motion for a new trial, exception was taken, and the case is before us for review.

The evidence is not clear in the record whether or not these obstructions are on the defendant's half lot according to the line testified to as the true one by the surveyor and so found by the jury; but from the map in the record, we take it that they are not on her half, but on the Thompson half lot.

1. The decree of the chancellor involves the subject of easements in ancient lights, the English doctrine thereon, the American view thereof, and what shall be the Georgia rule touching title to such lights derived from long use and possession thereof. There can be no doubt that the doctrine is well established by the common law of England, that long and uninterrupted use of such light, will give an

easement to the tenant so using it, to the light and air passing over the adjoining lands of another, and a property in such easement will thereby be acquired as certainly and completely as by grant or deed thereto—Washburn on Easements, 3d ed., 608, *et seq.;* Tyler on Fences and Lights, 521, *et seq.;* 1 Dick., R., 163 ; 2 Williams' Saunders R., 175. But the overwhelming current of American authority is the other way, and it runs upon the idea that such a principle is not appropriately applicable to this country, or the habits of our people. At one time, the earlier decisions, both in New York and Massachusetts, favored the English principle, which is now settled by act of parliament in the present reign, at twenty years' user to presume a grant; but the later decisions in both states, and, indeed, in almost, if not altogether, all the American states which have passed upon the subject, repudiate the principle as wholly inapplicable to us. Washburn on Easements, 612, *et seq.;* Tyler on Boundaries, etc., 531, *et seq.;* 19 Wendell, 309 ; 10 Barbour, 537 ; 10 Gray, 376 ; 14 Gray, 583 ; 15 Gray, 387. Our own statute, which adopted the English common law and the old English statutes, adopted them only where applicable to our people in this new country, and the circumstances surrounding them here ; and that which is applicable to the situation of our sister states of the American Union will, in the main, be applicable to Georgia also. Therefore, these views of the American authorities, and judgments of American courts, bear directly upon the point, whether the English doctrine of ancient lights was made the law of Georgia by our adopting statute. We do not think that it was ; because we concur in the view of other American courts, that it does not suit a young and growing country, such as ours is. Accordingly, in the case of *Mitchell vs. The City of Rome,* 49 *Ga.,* 19, the doctrine was fully and ably discussed by this court, Judge Trippe delivering the opinion. The English law of ancient lights working prescriptive title was repudiated, and this state, so far as reasoning and principle could place her there, was placed in full align-

ment with the other American authorities. That was a case, however, of the right to the lateral support of another's land, and not to an easement of this sort—of light and air passing over another's land ; but the principle was held to be the same, and that case was illustrated by reference to the easement of light and air—the power of a dominant over a servient estate, forever to debar the owner of the servient estate to assert his title *usque ad cœlum*, and to build to suit his own fancy on his own ground, unless, by express grant, he had parted with the right to do so. It is shown in that case, that it is absurd to claim a prescriptive right in a thing of which there has been and can be no actual possession, and, therefore, no adverse possession, and, therefore, no presumption of a grant ; and the distinction between water-courses, ways, commons, and the like, where there can be adverse possession, and such an easement as light and air, where there can be none at all, practical or tangible, is happily put, and we can add nothing to the argument ; but we apply the principle to this case, and hold that no user of this light and air was ever adverse to the possession thereof by Mrs. Turner, and that no prescriptive right thereto has been acquired. Indeed, independently of the repudiation by this court of the English doctrine of ancient lights, in this case Turner's possession was the possession of both contestants, for both bought at the same sale, and there is no adverse possession of one against the other long enough to work prescription anywhere, the sale taking place only three or four years ago.

2. But in this case, will not the executrix be estopped from obstructing these lights in Thompson's house by having conveyed him the title thereto ? This is a question not free from difficulty, and it has been decided differently by different courts. In Maryland it seems to be held that she would be estopped—Cherry *vs.* Stein, 11 Md., 1–24 ; whilst in Ohio, it is altogether denied—19 Ohio St., 135. In an elaborately argued case, or a number of cases rather, considered together, in Massachusetts, it is also held that the grantor

would not be estopped under circumstances like these, even if Turner, in his life-time, had sold directly to Thompson. This is a very recent and well-considered case, Chief Justice Gray delivering the opinion of the court—115 Mass., 204. So there are conflicting opinions in many of the other states. The court of appeals of New York seems to decide differently from Massachusetts—21 N. Y. R., 505; and see Tyler on Boundaries, etc., 534 *et seq.*; 10 Barbour, 537, seems, however, to be in harmony with Massachusetts. The principle applied by the supreme court of West Virginia, in a recent case there, seems to us sound and sensible, and we shall adopt it in this case—13 American R., 629. That principle is, that " an implied grant of an easement of light will be sustained only in cases of real necessity; and will be denied or rejected in cases when it appears that the owner claiming the easement can, at a reasonable cost, have, or substitute, other lights to his building." We think that the case at bar illustrates the propriety of the adoption of such a principle, and its application to the facts here. It strikes us that, on the one hand, it would be hard upon Mrs. Turner if she were forever enjoined from improving her lot by building thereon, when it is in evidence that the house was put up on the half lot to provide for the contingency of the sale and improvement of the other half; while it would be fully as hard, or much worse, and more inequitable, upon Thompson, to destroy these lights if they were *necessary* to the use of the rooms lighted by them, and the light could not be otherwise provided. The rooms would be almost useless without light. Can it be had by cutting windows elsewhere without ruining, endangering, or seriously injuring the house he bought? Are the light and air so obstructed as to make the rooms useless for the reasonable enjoyment for which she sold them? And can sufficient air and light be derived from other windows opened, or which could, conveniently and without serious detriment to the house, be opened to make the rooms reasonably useful and enjoyable for the purpose or use to which Turner, in his life-time,

had put them, and for which Thompson bought them? These questions were not put to the jury, and no evidence thereon appears in this record; yet the court decreed that Mrs. Turner should be perpetually enjoined from obstructing these lights, without regard to their necessity or the supply of light elsewhere. Certainly when Thompson bought, he bought to use and reasonably enjoy these rooms; and if he cannot do so, he is certainly wronged and hurt in his purchase; and as he bought from Mrs. Turner, as executrix of her husband, and as she bought the other half, we think that she must make these rooms useful by letting in air and light enough for the comfort and convenience of the inmates, unless Thompson can get light from other windows already opened, or which he can open without detriment or danger to his house. The case, in our judgment, will turn on the answers of the jury, on evidence submitted to them, to these questions. We apply this principle the more readily because it apppears to be the conclusion of Washburn, drawn from a consideration of all the English and American authorities, and because, as before stated, it strikes us as reasonable and right. Washburn says: "So far, therefore, as weight of authority, both English and American, goes, it would seem that, if one sell a house, the light *necessary* for the reasonable enjoyment whereof is derived from and across adjoining land, then belonging to the same owner, the easement of light and air over such vacant lot would pass as incident to the dwelling-house, *because necessary to the enjoyment thereof;* but that the law would not carry the doctrine to the securing of such easement as a mere convenience to the granted premises" — Wash. on Easements, p. 618 — and numerous cases are considered and cited to verify the conclusion. So Tyler approves the same principle—Tyler on Boundaries, etc., 550; and Judge Story is authority to the same point—1 Sumner, 492–502. We think, too, that if this easement was acquired as necessary to the enjoyment of the premises, upon the principles above considered and stated, a mere temporary abuse of the use of the windows

will not forfeit the easement; but the servient half lot will still be subject to its dominant neighbor, unless the windows be themselves altered or changed, so as materially to alter the relation of the two lots to each other—Washburn, 658; 7 Metcalf, 176. Therefore, the act of throwing filth and refuse into the garden will not forfeit the easement, but Mrs. Turner can sue for damages for such trespass, and if repeated over and over again, may get a permanent remedy by injunction. As to people looking at her, or addressing her, while it may be annoying thus to have her privacy intruded upon, and whilst only vulgar people would resort to it, it seems to us to be a case of *damnum absque injuria,* unless she can show some personal damage done her, or obscene language or conduct, to bring the case within the statute, and punish the offender.

3. The jury, from the evidence, we think, found the right dividing line. Regard should have been paid to the out-houses in the rear, and that circumstance, with the testimony of the city surveyor thereon, ought to conclude the case on that point. The fence should be removed to that line, and the obstructions or palings shutting out the windows, if on the Thompson side of the line, should be also removed; and if they obstruct the light *necessary* to the mansion and which cannot be supplied without serious injury to it elsewhere, Mrs. Turner should be enjoined from erecting them again even on her own land, so as to work such hurt to her vendee. The mere prospect from the windows—the view outside and the pleasure of looking upon the garden or the scenery—the law will not regard.

4. We must reverse the judgment and grant the new trial, because the decree goes too far, we think, in perpetually enjoining the executrix from obstructing the light without regard to the degree of obstruction or the necessity of these lights, not to be conveniently, or rather without injury to the building, to be supplied elsewhere over Thompson's own land. That decree, as it stands, might be held to enjoin her from building, if these lights were at all im-

paired; and we think such action ought not to be had except in case of necessity as before explained.

Judgment reversed.