18889, 18890. S. A. LYNCH CORPORATION *v.* STONE *et al.;* and *vice versa.*

Argued February 15, 16, 1955—Decided March 15, 1955.

*Merrell Collier, Henry L. de Give,* for plaintiff in error.

*Johnson, Hatcher & Meyerson, Stanley Meyerson,* contra.

MOBLEY, Justice. ■ At the interlocutory hearing Lynch tendered in evidence the affidavit of Howard J. Parker, to the following effect: Deponent was employed by Manget as office manager from 1917 to 1928. Manget bought the Cecil Hotel in 1920 and the building at the corner of Cone and James Streets in 1921. A short time after the latter building had been torn down for the purpose of building a ten-story annex to the Cecil Hotel, Manget had a meeting in his office, at which his attorney, Edgar Craighead, and Edgar Dunlap were present, and also several other people from Griffin Construction Company, which was builder of the annex. Dunlap objected to the building of the east wall of the annex on top of the party wall and to the windows that were to be in this wall looking out over the next-door property, and Manget was objecting that he could not build the hotel without these windows. The plans of the Cecil Hotel annex were gone over and discussed for some time. Following this meeting, there were several more wrangles, arguments, and

discussions between Manget and Dunlap and some of the others who were present at the first meeting. "That finally a settlement was reached between them, and Mr. John Manget was given the right to build on top of the party wall on the east and to have windows in the wall for light and air looking out over the adjacent property as shown on the plans and to have the light and air from over the adjacent property on the east for these windows; that after this settlement the east wall of the annex was built on top of the party wall and on up to ten stories high with the windows in it shown on the plans for the Cecil Hotel annex looking out over the adjacent three story building, and Mr. Dunlap did not make any further objection to the wall or the windows; that these windows were all in the east wall of the Cecil Hotel annex in 1923 when the Cecil Hotel and the Cecil Hotel annex were sold by Mr. John A. Manget to Carolina Realty Company; and that in building the Cecil Hotel annex Mr. John A. Manget spent for construction cost approximately $300,000." And further, the deponent "does not believe the settlement agreement was ever reduced to writing as he, as office manager, signed or witnessed all agreements for Mr. Manget and he does not remember signing or witnessing any written agreement; that as far as he knows Mr. John Manget relied on the oral settlement and went ahead with the building of the east wall of the annex and the windows in it in reliance upon the oral agreement and without any further objection from Mr. Dunlap."

The trial court did not err in excluding the first quoted portion of this affidavit, upon the ground that the testimony was "a conclusion remote and speculative assuming that a settlement was reached without specifying the exact terms, consideration and conditions, if any, of the alleged agreement, and it not being shown in the first place that the witness was present or had any reason to know that an agreement had been reached other than by his own guess work or deduction."

Nor did the trial court err in excluding the second quoted portion of the affidavit, upon the ground "that the same is based upon hearsay and pure speculation in that no facts are shown to substantiate positive knowledge on the part of the witness either that there was an oral settlement or that Mr. Manget relied upon any such purported settlement, and further that the witness is

only guessing and speculating, and concluding without facts on which to base the same, that there was no further objections from Mr. Dunlap, since it is not shown that the witness would necessarily have been informed of any such alleged objections."

■ The defendants tendered an affidavit of the defendant John E. Stone, which contained the statement: "Until this controversy arose some two or three weeks ago, your deponent had never heard mentioned by the owners of the 'Lynch' property, or by anyone else, that there was any claim of easements in air rights, light, or other encroachments adverse to the title of your deponent to the full use and enjoyment of his property." · ·

Counsel for Lynch objected to the above portion of the affidavit upon the grounds: (a) The witness seeks to deny facts and knowledge which the law imputes to him, by reason of the fact that the windows and the ventilator encroachment were plainly visible to anyone inspecting the Stone property. (b) The witness seeks, by parol to contradict the recitals in the deeds to the chain of title, which are in evidence, which under the law constitute constructive notice to the witness. (c) The witness seeks to contradict the constructive notice from recitals in the deeds in the chain of title which are in evidence, and the knowledge which the law imputes to him from the duty of inquiry, which said constructive notice imposes upon him, to inquire concerning the visible encroachments of the ventilator well and windows, which inquiry if made would have brought to the witness information as to the claim of plaintiff concerning said encroachments. (d) Because, in view of said constructive notice and duty of inquiry, the question of whether the witness had ever heard the claims mentioned by owners of the Lynch property, is immaterial and irrelevant, the witness having the same knowledge already by virtue of the constructive notice and duty of inquiry imposed by law.

The overruling of the above objections is assigned as error. The rules of evidence are not as strictly enforced on interlocutory hearings as on final trials, and the evidence complained of, even if improper, was not of such character as would require a reversal. *Griffith* v. *City of Hapeville*, 182 *Ga.* 333 (4) (185 S. E. 522); *State Highway Board of Ga.* v. *City of Baxley*, 190 *Ga.* 292 (2) (9 S. E. 2d 266); *Kniepkamp* v. *Richards*, 192 *Ga.* 509

(9) (16 S. E. 2d 24); *Hill* v. *Agnew*, 199 *Ga.* 644, 648 (34 S. E. 2d 702); *Pugh* v. *Moore*, 207 *Ga.* 453 (2) (62 S. E. 2d 153).

The next question for determination is whether the trial court erred in refusing to enjoin the defendants from constructing a building in a manner that would obstruct windows in the party wall. Ordinarily, the right to light and air is not derived from party walls. 49 L. R. A. (NS) 194. Where an owner of adjoining lots erected a building on each, with a common wall extending practically the entire length of the dividing line, and where thereafter the petitioner and the defendant Stone respectively became the owners of the two lots by deeds which conveyed to the petitioner all of one lot to the center of the wall, and to the defendant Stone the other lot to the center of the wall, the adjoining owners were not tenants in common of the party wall, but each owned in severalty to the center of the wall with an easement of support from the other. *Wilensky* v. *Robinson*, 203 *Ga.* 423 (1) (47 S. E. 2d 270, 2 A. L. R. 2d 1129). In Georgia no easement for light and air may be acquired by prescription. *Turner* v. *Thompson*, 58 *Ga.* 268 (1) (24 Am. R. 497). The right to the free passage of light and air is subject to the superior right of the adjoining landowner to make use of his property in good faith, and so long as it is not for a malevolent purpose he may improve his property in such a way as to cut off the free passage of light and air over his property. *Hornsby* v. *Smith*, 191 *Ga.* 491, 500 (13 S. E. 2d 20, 133 A. L. R. 684). When one sells a house, the light necessary for the reasonable enjoyment thereof being derived from and across adjoining land belonging to the same owner, the easement of light and air over such vacant lot shall pass as an incident to the house sold, because necessary to the enjoyment thereof. Code § 85-1201. However, such easement is acquired by implied grant and is based upon necessity, and when the necessity ceases, the easement ceases. Thus, in the case under consideration, if Rich acquired an easement for light and air to a window in the second and third floors of the building sold to him by Grant in 1912, the necessity ceased when that building was demolished in 1921 by Manget. Compare Code § 85-1402.

Applying the above legal principles to the pleadings and evidence, the trial court did not err in refusing to grant the petitioner's prayers for injunctive relief.

Paragraph 17 of the petition alleges: "In the construction of the basement of said ten-story hotel an opening was cut in said wall at the location of said seven-foot open space at the rear of the Stone lot, and this opening was extended eastwardly into the said open space for a distance of approximately two and one-half feet and a ventilator was constructed therein which extended upward to approximately two feet above the ground level of said open space. The top of this opening was covered over with wire grating and has been continuously used for ventilation for said basement from the date of construction to the present date." Paragraph 20 alleges: "The construction, conditions, and circumstances alleged in paragraphs 15 to 19 inclusive of this petition have remained continuously in effect as alleged, without change, from the year 1922 to the present date." Paragraph 24 alleges: "In connection with the construction of said ten-story hotel in 1921 and 1922 a six inch black cast iron roof drain pipe, (attached to the outside of the rear wall of the building on the Stone lot and extending from the ground to the roof of said building at a point immediately adjacent to the basement ventilation well which was then being constructed two and one-half feet into the seven-foot open space at the rear of the said Stone lot) was, by agreement between the said John A. Manget and the said Edgar Dunlap, carried under said east wall of said hotel and connected to the drain located in the basement of said hotel." Paragraph 25 alleges: "All of the above alleged acts in connection with the construction of said ten-story hotel were done by John A. Manget with the knowledge and agreement of the said Edgar Dunlap, (the then owner of the Stone lot), and, in reliance upon said knowledge and agreement, the said John A. Manget expended a sum in excess of $237,000 in constructing said hotel in the manner aforesaid." Paragraph 26 alleges: "The said ventilator well in said seven-foot open space at the rear of the Stone lot, the said drain pipe therein, the location of the east wall of said ten-story building, and the windows therein opening out over said open space and over the top of the three-story building on said Stone lot, are all plainly visible as of this date and have been continuously plainly visible since they were originally so constructed in the years 1921 and 1922." Paragraph 29 alleges: "By reason of all of the facts hereinbefore

524

alleged, petitioner has the legal right to maintain the said ventilator well extending two and one-half feet into said seven-foot open space at the rear of the building on the Stone lot. . ." In paragraph 43 of the defendant's answer, it is averred "That the existence upon defendant's own property of a 2½ foot ventilator in the so-called seven foot space to the south of your defendant's building prior to demolition (said space actually being 5 feet 3 inches) was not in any sense adverse against the title or possession of your defendant but was permissive only and the same is true of all other encroachments of petitioner upon your defendant's property."

The petition and the answer, each of which was verified, were introduced in evidence. Under a proper construction of the above pleadings, the ventilator was located and continued upon the Stone property by the permission of Stone and his predecessors. While the petitioner alleged that the ventilator was placed on the defendant's property by an agreement between the predecessors of the respective parties, and that the petitioner's predecessor expended money in reliance upon the agreement, still, there was no evidence stating the terms and conditions of any such agreement, and the mere fact that the petitioner's predecessor expended money, standing alone, would not suffice. Since it, appears from the cross-bill of exceptions, which was certified to be true by the trial court, that the judgment temporarily enjoining the defendants from building upon and above that portion of land actually occupied by the ventilator structure, was upon the basis of the acquisition of title by the petitioner by adverse possession for more than 20 years, and since in law permissive possession can not be adverse, it follows that, where, as here, the pleadings and evidence show that the character of the possession was permissive, the trial court erred insofar as the judgment enjoined the defendants from building upon and above that portion of the defendant's land actually occupied by the ventilator structure.

■ Finally, the petitioner complains that the trial court erred in not granting a supersedeas pending a review of the case by this court. It was within the discretion of the trial court to require a bond of the petitioner to protect the rights of the parties pending a review by this court. Code § 55-202; *Mills* v.

*Boyd,* 146 *Ga.* 60 (90 S. E. 378). Since the petitioner failed to make the bond which the court afforded it an opportunity to do, there is no merit in this insistence.

*Judgment reversed on the cross-bill of exceptinos. Affirmed on the main bill. All the Justices concur.*