24532. WARD, Chairman v. NATIONAL DAIRY PRODUCTS CORPORATION.

ARGUED MARCH 12, 1968—DECIDED APRIL 9, 1968.

*Arthur K. Bolton, Attorney General, Alfred L. Evans, A. Joseph Nardone, Jr., Assistant Attorneys General, Don L. Hartman,* for appellant.

*King & Spalding, William H. Izlar, Jr., Charles L. Gowen, A. Felton Jenkins, Jr.,* for appellee.

ALMAND, Presiding Justice. Pursuant to the provision of Section 23 (b) of the Georgia Milk Control Act (Ga. L. 1937, pp. 247, 263, Ga. L. 1957, pp. 342, 347, Ga. L. 1958, pp. 256, 265; *Code Ann.* § 42-559) and with the approval of the Georgia Milk Commission, Clifton A. Ward, as chairman and director of the commission, brought an equitable petition in which he sought to enjoin National Dairy Products Corporation d/b/a Sealtest Foods, Southern Division, from continuing to distribute milk in the Athens Milk Shed until it had obtained a license to do so from the Georgia Milk Commission as required by the Milk Control Act.

The defendant in its answer admitted it had not obtained a license from the commission to distribute milk in the Athens Milk Shed alleging there was no necessity to do so because the licensing provisions of the 1937 Milk Control Act violated stated provisions of the Federal and Georgia Constitutions. Defendant prayed that the petition be dismissed.

After a hearing the trial court entered the following order: "The defendant National Dairy Products Corporation, d/b/a Sealtest Foods—Southern Division, shall make another application for a license in the Athens Milk Shed within ten (10) days from this date. Such application shall be for the license year 1968 which is the calendar year 1968.

"If the Georgia Milk Commission grants the license this case shall become moot and shall be dismissed upon that fact being brought to the attention of the court.

"If the Georgia Milk Commission refuses to grant the license for the said Athens Milk Shed for the year 1967 and 1968 after a hearing if the commission desires one, they shall state the ground or grounds on which it is denied. The Georgia Milk Commission may not refuse to grant the license on the ground that it has not been shown that the issuance of the license will not tend to promote a destructive or demoralizing competition in a market already adequately served or on the ground that the applicant has failed to show that the issuance of the license is in the public interest. The fact that defendant has conducted, and will continue under the terms of this order, to conduct business in milk sheds where it has no license shall not be a ground on which to refuse a license.

"If the defendant's application for such license is denied, the defendant shall have a hearing before this court [Fulton Superior Court] in order to show the invalidity of any ground upon which the license has been denied and shall also have the right at such hearing to assert each and all of its defenses and to be heard on its contention that the licensing provisions of the Georgia Milk Control Act are unconstitutional, null and void for each of the reasons and grounds set forth in its answer. By applying for such license pursuant to this order the said defendant shall not be deemed to have waived or to be estopped from asserting each and all of the said defenses or any other defense that may be available to it under the facts and pleadings in this case as they exist from time to time.

"In the meanwhile, the defendant shall continue the business now being conducted by it in those milk sheds in which it is doing business on this day and neither the plaintiff nor the Georgia Milk Commission shall interfere therewith until the further order of this court granted after hearing.

"This court retains jurisdiction of the case."

The plaintiff filed his notice of appeal and enumerated the following as errors: "1. The court erred in entering an interlocutory injunction against plaintiff and the Georgia Milk Commission.

"2. The court erred in ruling that the fact that defendant has conducted and will continue to conduct business in milk sheds in which it is not licensed, shall not constitute a valid

ground for the commission to refuse to license it to operate in the Athens Milk Shed.

"3. The court erred in holding that defendant may continue to do business without a license in those milk sheds in which it was doing business on the date of the court's order.

"4. The court erred in refusing to grant the interlocutory injunction as prayed in plaintiff's complaint."

■ Plaintiff asserts that the effect of the fifth division of the court's order is to grant an interlocutory injunction against the plaintiff, and this was error because the defendant did not pray for such relief. Plaintiff cites in support of this contention several decisions of this court. All of the cited cases were decided prior to the Civil Practice Act of 1966 (Ga. L. 1966, p. 609; Code Ann. Title 81A). Section 15 of that Act (Ga. L. 1966, pp. 609, 627; Code Ann. § 81A-115 (b)) provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues." Section 54 (c) of said Act (Ga. L. 1966, pp. 609, 658; Code Ann. § 81A-154 (c)) provides: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings; but the court shall not give the successful party relief, though he may be entitled to it, where the propriety of such relief was not litigated and the opposing party had no opportunity to assert defenses to such relief." "Judgment" as used in this Act includes a decree and any order from which an appeal lies. Ga. L. 1966, pp. 609, 658; Code Ann. § 81A-154 (a).

The transcript of the record does not include the evidence introduced on the hearing. We, therefore, must assume that under the above provisions of the Civil Practice Act the court was authorized to grant the defendant injunctive relief.

■ The court made no ruling on any of the grounds asserted

by the defendant attacking the licensing provisions of the Georgia Milk Control Act, but reserved these questions for a future hearing if the defendant's application for a license was denied. In Paragraph 4 of the court's order it was provided: "If the defendant's application for such license is denied, the defendant shall have a hearing before this court [Fulton Superior Court] in order to show the invalidity of any ground upon which the license has been denied and shall also have the right at such hearing to assert each and all of its defenses and to be heard on its contention that the licensing provisions of the Georgia Milk Control Act are unconstitutional, null and void for each of the reasons and grounds set forth in its answer. By applying for such license pursuant to this order the said defendant shall not be deemed to have waived or to be estopped from asserting each and all of the said defenses or any other defense that may be available to it under the facts and pleadings in this case as they exist from time to time."

It does not appear that the court distinctly passed upon these constitutional questions, and they are not now before us. See *Huiet v. Dayan,* 194 Ga. 250 (3) (21 SE2d 423). It is apparent from the record that the trial judge by his order was seeking to maintain the status quo pending further action of the parties looking to a further hearing upon the happening of future events. This court recognizes the rule of balancing the conveniences of the parties. "There should be a balance of conveniences in such cases, and a consideration whether greater harm might be done by refusing than by granting the injunction." *Everett v. Tabor,* 119 Ga. 128 (4) (46 SE 72). "Where the evidence is conflicting, and it appears that the injunction if granted would not operate oppressively to the defendant, but that if denied the complainant would be practically remediless in case he should thereafter establish the truth of his contentions, it would be strong reason why the chancellor should exercise his discretion so as to preserve rights by preserving the status." *Everett v. Tabor,* 119 Ga. 128 (5), supra. The evidence before the trial judge is not before us, and we cannot say he erred in refusing to grant an interlocutory injunction as prayed by the plaintiff or in his rulings complained of in the second and third enumerations of error.

*Judgment affirmed. All the Justices concur, except Undercofler, J., who dissents from the ruling in Division 2 and the judgment of affirmance.*