## A05A0035, A05A0036. SAVANNAH JAYCEES FOUNDATION, INC. et al. v. GOTTLIEB et al.; and vice versa.
(615 SE2d 226)

JOHNSON, Presiding Judge.

Linda Gottlieb and Hebrew Academy of Savannah, Inc. (the "plaintiffs"), who own property in the Groveland Subdivision Part Three in Savannah, filed a declaratory judgment action against the Savannah Jaycees Foundation, Inc. and Savannah Jaycees Incorporated (the "Jaycees"), the owner and lessee of a parcel of real property (the "Property") designated as a "park" on the subdivision plat. The plaintiffs, who claimed that the Jaycees had begun erecting a fence on the Property and had threatened to tow the automobiles of subdivision residents, asked for a declaration of their rights and the Jaycees' rights in the Property. Following a bench trial, the trial court held that the Jaycees could erect an eight-foot-high fence on the Property's western boundary, but that the plaintiffs could park their cars on the Property incidental to an easement for recreational use. The plaintiffs appeal in Case No. A05A0036, and the Jaycees appeal in Case No. A05A0035. For the reasons set forth below, we affirm in Case No. A05A0036. We affirm with direction in Case No. A05A0035.

Viewed in a light most favorable to the trial court's findings, the evidence shows that the Property was designated as a "park" in the Groveland Subdivision Part Three plat recorded in the Chatham

County records in 1955. The Jaycees Foundation acquired title to the Property in 1986. The Property has been used for recreational purposes by subdivision residents and community organizations since its designation as a park.

Since at least 1963, subdivision residents and members of the adjacent synagogue have parked their cars on the northern part of the Property. The members of the Jaycees also park their cars on the Property during their weekly meetings. The street adjacent to the Property is insufficient to provide sufficient parking for those who do not live in the immediate area but wish to use the Property.

For many years a prominently located sign indicated that parking on the Property was limited to the Jaycees, the neighboring synagogue, and "for use of the park." However, this sign was torn down during the construction of Buckingham South, an assisted living facility located on the western boundary of the Property but outside the subdivision. After Buckingham South began operations, persons associated with the facility, including employees and visitors, began parking their vehicles on the Property, causing damage to the ground surface. Buckingham South also placed paving material on the Property.

A Jaycees' officer wrote the owner of Buckingham South and notified her that the Jaycees considered Buckingham South to have made illegal alterations to the Property, and that the Property should not be used for overflow parking by facility residents, employees, and visitors. After Buckingham South ignored the complaint, the Jaycees began constructing an eight-foot-high wooden board fence along the western boundary of the Property adjacent to the Buckingham South facility, and the Jaycees also placed the framing for a fence along the edge of the Property facing the public road. The plaintiffs objected to the construction of the fence, and they filed the declaratory judgment action.

## Case No. A05A0035

1. The Jaycees claim the trial court erred in finding the plaintiffs were entitled to free and open access to the Property at all times including the right to use any portion of the Property for automobile parking. We conclude the trial court did not err in its judgment, but that its order was overly broad to the extent it allows the plaintiffs to park their automobiles on any portion of the Property.

"The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of review applies where the appellate court

determines that the issue was of law, not fact."[1] The construction, interpretation and legal effect of a contract such as an easement is an issue of law.[2]

The Property is designated as a "park" in the Groveland Subdivision Part Three plat and, pursuant to this designation, the plaintiffs, property owners within the subdivision, have an express easement in the Property for use as a recreational park.

> Where the owners of a tract of land subdivide it into lots, record a map or plat showing such lots, with designated streets and a public park, and sell lots with reference to such map or plat, the owners are presumed to have irrevocably dedicated such streets and park for the use of all of the lot owners in the subdivision. The owners of lots in the subdivision have an easement in these public areas whether or not there has ever been an acceptance of the dedication by public authorities or the public generally.[3]

At issue is whether the easement includes the right of the plaintiffs to park their automobiles on the Property. Although the trial court found an express easement in the plaintiffs to use the Property for parking, its analysis focused on whether parking on the Property was implied by necessity. The trial court's judgment, which authorized parking "incidental to the recreational purposes for which the [Property] is intended," is consistent with a finding that the express easement for recreation impliedly includes the authority of the plaintiffs to park on the Property. "[T]he grant of an easement impliedly includes the authority to do those things which are reasonably necessary for the enjoyment of the things granted."[4] Furthermore, "[w]here an easement is granted without limitations on its use, the grantee is entitled to avail himself of other reasonable uses which develop over time if such uses significantly relate to the object for which the easement was granted."[5]

The trial court found that Gottlieb often traveled to the Property by vehicle and parked there because of her physical limitations. The trial court also found that Hebrew Academy formerly used the

---

[1] (Punctuation and footnotes omitted.) *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002).

[2] *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565, 566 (2) (397 SE2d 435) (1990).

[3] (Citation and punctuation omitted.) *Northpark Assoc. No. 2., Ltd. v. Homart Dev. Co.*, 262 Ga. 138, 139-140 (1) (414 SE2d 214) (1992).

[4] (Citation and punctuation omitted.) *Roberts v. Roberts*, 206 Ga. App. 423, 424 (2) (425 SE2d 414) (1992).

[5] (Citation omitted.) *Jakobsen*, supra, 260 Ga. at 566.

building located on the Property as a school, and parents and teachers used the Property to park, and that although Hebrew Academy's use of the Property was not ongoing, evidence did not establish Hebrew Academy intended to abandon its rights.[6] Based on these findings, the trial court concluded the plaintiffs had established that parking on the Property was necessary for them to use the easement.

We agree with the trial court, especially when we take into account the undisputed evidence that persons have for at least the past 40 years parked automobiles on the Property incident to their recreational use of the Property, and parking on the adjacent public street is limited. Furthermore, the Jaycees never objected to parking on the Property by subdivision residents or synagogue members before the dispute with Buckingham South, and the members of the Jaycees also parked on the property during their weekly meetings, indicating that the Jaycees considered parking to be a reasonable use of the Property. Thus, evidence shows that parking is a reasonable use of the recreational easement associated with the Property which significantly relates to its purpose. The plaintiffs, as the grantees of an easement without limitations on its use, are entitled to use the Property for parking incidental to their easement for recreation, and the trial court did not err in so finding.[7]

The Jaycees further complain that the trial court's order deprives them of reasonable control of parking on the Property. The trial court, in part, held that "[t]he plaintiffs are entitled to free and open access to the park at all times including the right to use any portion of the park for automobile parking as a use incidental to the recreational purposes for which the park is intended." While we see no basis for the Jaycees to restrict the plaintiffs' right to use the Property for recreational purposes, unlimited parking rights were not shown to be reasonably necessary for plaintiffs' to enjoy the easement. "[T]here remains in the grantor the right of full dominion and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement granted."[8] Accordingly, we conclude that the trial court's order was unduly broad, and we direct that the trial court modify the order such that plaintiffs may park their automobiles on the Property incidental to the recreational purposes for which the easement is intended, subject to the right of the Jaycees to reasonably restrict the area of the Property on which

---

[6] See id. at 567 (3) (nonuse of an easement without evidence of intent to abandon does not constitute abandonment).

[7] See id. at 566 (2); *Roberts,* supra, 206 Ga. App. at 424-425 (2).

[8] (Citation and punctuation omitted.) *Folk v. Meyerhardt Lodge &c.,* 218 Ga. 248, 249 (127 SE2d 298) (1962).

parking is allowed.[9]

2. The Jaycees object to the portion of the trial court's order requiring that they take affirmative action because the plaintiffs made no request for injunctive relief in their petition for declaratory relief. The only affirmative action ordered by the trial court was that "[t]he [Jaycees] must remove the fence and posts, gate and columns around the boundary along Atlas street which they have erected." The Jaycees acknowledge that the trial court was authorized to grant injunctive relief although it was not specifically prayed for.[10] However, they contend that the propriety of the relief was not litigated, and they were not afforded the opportunity to assert defenses.[11] We disagree.

Plaintiffs' petition asked the court to declare the respective rights of the parties in the Property and to "grant such further relief as the Court [d]eems just and proper." During opening statement, plaintiffs' counsel complained of the Jaycees constructing poles on the northerly side of the Property adjacent to the public road and later requested the trial court order that all fencing material placed around the Property be removed. Testimony showed that the Jaycees had erected posts and framing for a fence next to the road, there had never been a problem with people driving from the road, over the sidewalk, and into the Property, and a fence in that area "would send a signal that [people are] not welcome in the park they've used." Based on the foregoing, we conclude the trial court was authorized to order the Jaycees to remove the fencing and other material erected adjacent to the public road.[12]

## Case No. A05A0036

3. The plaintiffs contend the trial court erred in granting the Jaycees the right to erect an eight-foot-high fence along the western boundary of the Property. We disagree.

The plaintiffs argue that the trial court failed to recognize the rights of the subdivision residents and the general public to access the Property. However, "unless the easement is exclusive, the grantor

---

[9] See *Kiser v. Warner Robins Air Park Estates*, 237 Ga. 385, 387-388 (3) (228 SE2d 795) (1976) (judge's order was unduly broad, and our Supreme Court directed that the judge modify his order to enjoin the appellants from interfering in any manner with the reasonable use of the easement).

[10] See OCGA § 9-11-54 (c) (1).

[11] See *Ward v. Nat. Dairy Products Corp.*, 224 Ga. 241, 244 (1) (161 SE2d 305) (1968) (court shall not give the successful party relief where the propriety of such relief was not litigated).

[12] See *Church v. Darch*, 268 Ga. 237, 238 (2) (486 SE2d 344) (1997).

may construct buildings or other improvements on the land which do not 'substantially interfere' with the enjoyment of an easement previously granted."[13] The trial court found, and evidence shows, that a fence erected on the western boundary of the Property would not substantially interfere with the easement granted to the plaintiffs. The tract to the west of the Property is not within the subdivision, and the fence would not inhibit access to the Property from the subdivision. Furthermore, the trial court did not err in failing to consider access to the Property by the general public. The trial court concluded that although recording of the subdivision plat raised a presumption of dedication to the general public, there was no evidence of an acceptance by the public authorities or the public in general.[14]

The plaintiffs also argue that the trial court erred in failing to recognize that the eight-foot-high fence would impair their easement to light and air in the Property. OCGA § 44-9-2, the statute cited by the plaintiffs, is inapplicable because an easement to light and air thereunder is recognized only upon establishment of certain facts which the plaintiffs have failed to show.[15] As a general rule, "[t]he right to the free passage of light and air is subject to the superior right of the adjoining landowner to make use of his property in good faith, and so long as it is not for a malevolent purpose he may improve his property in such a way as to cut off the free passage of light and air over his property."[16] Although the plaintiffs continually refer to the proposed barrier as a "spite fence," the evidence does not demand the conclusion that the Jaycees acted out of malevolent intent. Rather, the evidence tends to show the Jaycees were motivated to protect the Property from unauthorized users. The trial court did not err in finding that the construction of the fence on the western boundary of the Property would not violate an easement of light and air in the Property.

*Judgment affirmed in Case No. A05A0036. Judgment affirmed and case remanded with direction in Case No. A05A0035. Ruffin, C. J., and Barnes, J., concur.*

---

[13] (Citations omitted.) *Upson v. Stafford*, 205 Ga. App. 615, 616 (422 SE2d 882) (1992). Accord *East Beach Properties v. Taylor*, 250 Ga. App. 798, 801 (2) (552 SE2d 103) (2001).

[14] See *Walker v. Duncan*, 236 Ga. 331, 332-333 (223 SE2d 675) (1976) (recording of a subdivision plat acts as the grant of an easement to the purchasers of the property, but also raises a presumption of intent to dedicate to the public).

[15] This provision applies only if "a person sells a house and the light necessary for the reasonable enjoyment thereof is derived from and across adjoining land belonging to such person, the easement of light and air over such vacant lot shall pass as an incident to the house sold as being necessary to the enjoyment thereof." OCGA § 44-9-2. See *Goddard v. Irby*, 255 Ga. 47 (1) (335 SE2d 286) (1985) (interpreting right as existing as of the time house is sold, with the adjoining property vacant, and not as coming into being at some later time).

[16] (Citation omitted.) *S. A. Lynch Corp. v. Stone*, 211 Ga. 516, 522 (3) (87 SE2d 57) (1955).

DECIDED MAY 23, 2005.

*Wiseman, Blackburn & Futrell, James B. Blackburn, Jr., Patrick F. Roughen, Jr.,* for appellants.
*Thomas A. Nash, Jr.,* for appellees.