## A08A2416, A08A2417. BROWN v. QBE INSURANCE CORPORATION; and vice versa.

(677 SE2d 363)

ELLINGTON, Judge.

Jeremiah Brown was seriously injured in a collision involving his automobile and a tractor-trailer owned by Browning Trucking Company. Brown sued the trucking company and others for damages and, during the course of that litigation, the Superior Court of Laurens County ruled that an insurance policy issued by the trucking company's insurer, QBE Insurance Corporation, was in effect at the time of the collision. The court ruled that the policy was still in effect because the collision occurred after the trucking company's insurance had expired but before QBE properly notified the appropriate state agency of the policy's expiration. Following the court's ruling, QBE filed a counterclaim seeking a declaratory judgment, asking the court to determine whether it would be responsible to its insured for $1,000,000 in coverage, the amount of coverage provided by the policy, or for only the statutory minimum amount of coverage. The court granted summary judgment to QBE and ruled that QBE would only be responsible for the statutory limits of coverage.

In Case No. A08A2416, Brown appeals from the trial court's grant of summary judgment to QBE on its counterclaim for a declaratory judgment. In Case No. A08A2417, QBE cross-appeals from the trial court's ruling that the insurance policy was in effect at the time of the collision. Because we conclude that the court erred in finding that the insurance policy was in effect at the time of the collision, we reverse the court's order in Case No. A08A2417. Thus, pursuant to our decision, it is unnecessary for us to reach the issues in Case No. A08A2416, because the question regarding the limits of coverage for which QBE would be responsible is moot.

### Case No. A08A2417

1. QBE contends that the court erred in finding that the insurance policy was still in effect at the time of the collision, arguing that the evidence showed it had complied with the requirements for notifying the agency that it no longer insured the trucking company. Specifically, QBE contends that the court erred in finding that the document originally filed by QBE to notify the agency that the policy was about to expire was not in an "acceptable form" when the agency originally received it in 2002 and that, consequently, the actual receipt date of the form was not until March 29, 2005, when QBE resubmitted the form to the agency. For the following reasons, we agree with QBE's contentions.

*Applicable statutes and regulations.* In order to properly address QBE's arguments, we must first look at the relevant statutes and regulations. The Motor Carrier Act of 1931, OCGA § 46-7-1 et seq., gave the Georgia Public Service Commission ("PSC") "the power to regulate the business of persons engaged in the transportation of persons and property for hire on any public highway" in Georgia.[1] In July 2001, the Georgia General Assembly passed legislation that transferred responsibility for the regulation of motor carriers from the PSC to the Department of Motor Vehicle Safety ("DMVS").[2] Following the transfer, a motor carrier had to either file a bond or have a certificate of liability insurance, designated as "Form E," on file with the DMVS before the DMVS was authorized to issue the carrier a certificate that allowed it to operate in the state.[3] Once the Form E was on file, the motor carrier's liability insurance remained in effect until 30 days after the DMVS received a separate form, designated as "Form K," from the insurer notifying the DMVS that the insurance policy had been cancelled or was about to expire.[4] Therefore, until the DMVS received a completed Form K from the insurer, the insured's policy remained in effect, even if the insured failed to renew the policy or pay premiums on it. See *DeHart v. Liberty Mut. Ins. Co.*, 270 Ga. 381, 385-386 (509 SE2d 913) (1998) (discussing the commission's "continuing coverage" provision and stating that, until the insurer gives proper notice to the commission, "the policy is effective for the benefit of the public") (punctuation and footnote omitted).

*QBE's insurance policy and its filing of the Form K with the DMVS.* Turning to the record in this case, it shows the following

---

[1] (Footnote omitted.) *Thompson v. Gen. Security Ins. Co.*, 286 Ga. App. 583, 584 (649 SE2d 736) (2007).

[2] See Ga. L. 2000, p. 951, § 9-4; former OCGA § 46-7-1 (references in chapter to "Commissioner" or to the "Department" referred to the DMVS; statute was amended in 2005 to state that the references again referred to the PSC).

[3] See former OCGA §§ 46-7-3; 46-7-12 (amended in 2005); former Transportation Rules of Georgia PSC, Rule 7-2.6 (a) (requirements for the certificate of insurance), (c) (1) ("Uniform motor carrier bodily injury and property damage liability certificate of insurance shall be in 'Form E' prescribed by the [PSC].").

[4] Under the former Transportation Rules of Georgia PSC, Rule 7-2.6 (b),
[c]ertificates of insurance evidencing coverage shall be continuous and shall not be canceled or withdrawn until after thirty (30) days' notice in writing by the insurance company . . . has first been given to the Commission at its offices in Atlanta, Georgia, which period of thirty days shall commence to run from the date such notice is actually received at the office of the Commission. Upon receipt of the notice, [the] original stamped copy will be retained in the files of the Commission as evidence of the date of cancellation thereof and attached to the certificate of insurance[.]
See also former Transportation Rules of Georgia PSC, Rule 7-2.6 (c) (3) ("Uniform notice of cancellation of motor carrier insurance policies shall be in 'Form K' prescribed by the [PSC].").

undisputed facts. On May 14, 2001, QBE issued a motor carrier insurance policy to Browning Trucking Company; the policy's expiration date was May 14, 2002. On May 21, 2001, QBE filed a form ("Form E") certifying the coverage with the DMVS, so that Browning Trucking Company could legally operate its trucking business in Georgia. On March 25, 2002, QBE filed a Form K with the DMVS which notified the agency that the policy was going to expire on May 14, 2002. The form complied with the PSC's Transportation Rule 7-2.6 (b) and (c) (3) and identified the trucking company, insurance company, policy number and cancellation date of the policy, although QBE had written in a space near the top that it was filed with the "Georgia Public Service Commission" instead of the "DMVS."[5] A DMVS employee stamped the form as having been filed in the DMVS office on March 25, 2002. The DMVS did not enter the filing of the Form K in its computer database, though, or put a copy of the form in its file on Browning Trucking Company.

*DMVS procedures for handling a Form K in 2002.* Betty Dewberry, who worked as the lead operator in registration at the PSC from 1993 until 2000 and at the DMVS from 2000 until May 2005, testified about how she handled Form Ks in 2002. According to Dewberry, after the DMVS took over the responsibility for administering Forms E and K, if an insurance company filed a Form K that referred to the "PSC" instead of the "DMVS," the agency would send the Form K back to the insurance company with directions to change the "PSC" to read "DMVS" and to refile the form. Then, when the insurance company returned the Form K to the DMVS, the agency would enter the form into its database and would use the original stamped date as the date the form was filed. Dewberry testified that it was "state policy" to honor the date the Form K was first filed with the DMVS. Dewberry also testified that the critical information on the Form K was the expiration date of the insurance policy; everything else could be changed and the DMVS would still honor the original date it had received the form. There was no evidence that the reference to the "PSC," or a later amendment marking through the "PSC" and writing in "DMVS," invalidated the Form K. Dewberry and other former DMVS employees who were

---

[5] Although the DMVS, not the PSC, was responsible for the regulation of motor carriers in 2002, former PSC Transportation Rule 7-2.6 (b), which was in effect at that time, still stated that insurance coverage is continuous until the insurance company gives 30 days notice in writing to "the *Commission* at its offices in Atlanta, Georgia," and that the "*Commission*" will retain the form in its files as evidence of the date of cancellation. (Emphasis supplied.) See footnote 4, supra; see also current Transportation Rules of Georgia PSC, Rule 515-16-11-.08 (2) (which still contains the same language, even though the legislature transferred the responsibility for regulating motor carriers to a different agency, the Georgia Department of Revenue, in 2005); footnotes 6 and 7, infra.

deposed admitted that they were unaware of any written policies or procedures as to whether the agency should accept or reject Form Ks that complied with the PSC's rules but which contained a reference to the "PSC" instead of the "DMVS" and that they did not receive any specific training on how to handle this situation.

As to the Form K at issue in this case, none of the former DMVS employees remembered seeing or handling the form in March 2002, nor did they know what happened to the form after March 2002. Dewberry admitted that she was just assuming that a DMVS employee had sent the Form K back to QBE in March 2002. There are no notes in the DMVS's file for Browning Trucking Company nor any other evidence showing that the DMVS actually sent the form back to QBE or otherwise demonstrating what happened to the Form K after QBE filed it with the DMVS in March 2002.

*The collision and the resulting personal injury suit.* On June 11, 2003, almost 15 months after QBE had filed the Form K notifying the DMVS that its insurance policy covering Browning Trucking Company was going to expire on May 14, 2002, a Browning Trucking Company tractor-trailer collided with Jeremiah Brown's car, resulting in serious injuries to Brown. On February 11, 2005, Brown filed a personal injury suit against Browning Trucking Company and the truck driver, as well as QBE and two other insurance companies. QBE answered and denied that it was a proper party to the suit, averring that it did not have a policy of insurance in effect for the trucking company or driver on the date of the collision. QBE contacted the DMVS about the Form K it had filed in 2002 and provided the agency with a stamped copy of the form, which showed the March 2002 filing date. Dewberry instructed QBE to cross out the reference to the "PSC" on the form and to write in "DMVS." After QBE complied, Dewberry entered the Form K into its computer system reflecting a "received on" date of March 25, 2002.

Relying upon this evidence, QBE filed a motion for summary judgment, and the trial court granted the motion on February 28, 2006. According to the court's order, the undisputed evidence showed that QBE timely submitted the Form K before it discontinued insurance coverage for Browning Trucking Company and, even though there was an amendable error on the form that QBE fixed after Brown filed suit, state policy required the effective date of such notice to be the date of QBE's initial submission of the Form K. Thus, the court concluded that QBE did not cover Browning Trucking Company at the time of the collision and could not be held responsible for any resulting damages.

*The Georgia Department of Revenue's alteration of the agency database and its effect on the trial court's rulings.* Between the time Brown filed his suit and the court granted summary judgment to

QBE, the Georgia General Assembly amended the Code to eliminate the DMVS and to substitute the Department of Revenue ("DOR") as the successor agency that was responsible for certifying motor carriers.[6] The amendment became effective on July 1, 2005.[7] On April 5, 2006, after the trial court had granted summary judgment to QBE, Brown's counsel contacted the DOR and asked it to revise its records concerning Browning Trucking Company to reflect that QBE's Form K was formally filed in March 2005, after the collision at issue, instead of in March 2002, as shown on the form itself. According to a letter by Douglas Hooper, the director of the DOR's Motor Vehicle Division, Hooper agreed to alter the agency's records to show the March 2005 filing date "because the evidence is that [QBE] failed to return a form that [had] been incorrectly completed and, therefore, failed to file the required [Form K] when the policy was cancelled in 2002." Even though Hooper admitted in his letter that QBE's Form K complied with the specific language of PSC Transportation Rule 7-2.6 when QBE filed it in March 2002, he still concluded that the DOR had "a duty to revise its record to reflect the actual date of receipt of the correct Form K" in March 2005. During his deposition, Hooper again admitted that QBE's Form K complied with PSC Transportation Rule 7-2.6 when QBE filed the form in 2002. He also admitted that, although he had previously worked at the DMVS, he had no personal knowledge of the March 2002 filing of QBE's Form K, could not remember if he had consulted with any agency employees who had handled the form in 2002 before he wrote the letter and altered the agency's records, and did not keep a record of any investigation he may have conducted regarding the filing of the form. In addition, Hooper admitted that he did not think that the agency had any written policies in place in 2002 regarding which Form Ks to accept and which to reject. Moreover, Hooper admitted that he was not aware of any agency policy that prohibited Dewberry from backdating the agency's computer records in 2005 to show that QBE had filed the form in 2002.

Relying upon Hooper's letter and Hooper's alteration of the DOR's records, however, Brown filed a motion to reconsider or vacate the court's grant of summary judgment to QBE, and the court granted Brown's motion and set aside its order. The court then conducted a bench trial on the issue of when QBE had filed the Form K with the DMVS. On March 27, 2008, the court entered an order finding that the Form K had not been in an "acceptable form" when QBE originally filed it with the DMVS and that, consequently, "the

---

[6] Ga. L. 2005, p. 334, §§ 1-1 (eliminating the DMVS), 28-2.
[7] Ga. L. 2005, p. 334, § 32-1.

effective date of the Form K filed with the DMVS was March 29, 2005." Thus, under the continuing coverage provision of PSC Transportation Rule 7-2.6 (b), QBE's policy covering Browning Trucking Company was still effective on June 11, 2003, the day Brown was injured in the collision.

(a) *The trial court erred in concluding that QBE's Form K was not in "acceptable form" when originally filed with the DMVS*. It is undisputed that QBE's Form K complied with PSC Transportation Rule 7-2.6 and that QBE timely filed it with the proper agency, the DMVS, in 2002, even though QBE referenced the "PSC" at the top of the form. Dewberry testified that the only critical information on the Form K was the date the policy was to expire; as long as that was correct and the form was stamped as received by the agency, all other information could be altered and the agency would still honor the original date it had been received. Given the undisputed evidence that QBE's Form K complied with the applicable agency rules and that a reference to the "PSC" instead of the "DMVS" was something that could be changed without affecting the original filing date of the form, the evidence demands a finding that QBE's single reference to the "PSC" (made just months after the DMVS took over the functions of the PSC and while the applicable rules still directed insurers to file the Form K with the PSC) did not affect the validity of the form. Therefore, the court erred in finding that QBE's Form K was not in acceptable form when filed in 2002.

(b) *The trial court's ruling that the effective date of QBE's Form K was March 29, 2005, which was based upon a finding as a matter of fact that the DMVS had sent the Form K back to QBE in March 2002 to be corrected and that QBE failed to timely resubmit the amended form, was unsupported by any evidence and, therefore, was clearly erroneous.*

In Georgia, "a document is considered filed when it is delivered to and received by the proper official to be kept on file. . . . Once received, it [is] the [agency's] responsibility to ensure that the form [is] properly processed." (Footnote omitted.) *Thompson v. Gen. Security Ins. Co.*, 286 Ga. App. at 587 (1).[8] See also *Valentine v. Hammill*, 258 Ga. 582, 582-583 (372 SE2d 435) (1988) ("It is a well established rule in Georgia that a paper is said to be filed, when it is delivered to the proper officer, and by him received to be kept on file.") (citation and punctuation omitted). Thus, the fact that the

---

[8] Brown argues that *Thompson* does not apply to this case because the Form K in *Thompson* did not have any mistakes, whereas the Form K in this case referenced the "PSC" instead of the "DMVS." *Thompson v. Gen. Security Ins. Co.*, 286 Ga. App. at 587 (1). As established in subdivision (1) (a), supra, however, it is undisputed that the form in this case fully complied with the requirements of the PSC Transportation Rules.

Form K does not appear in the agency's files or in its computer records does not negate the fact that the undisputed direct evidence shows that QBE filed the form with the DMVS in March 2002. See *Thompson v. Gen. Security Ins. Co.*, 286 Ga. App. at 587 (1) (because the insurance company which had covered the motor carrier presented direct evidence that it filed a Form K with the PSC in 2001, prior to the collision which caused the plaintiff's injuries, it was entitled to summary judgment on the plaintiff's claims, even though the PSC had no record in its files or computer that it had received the form).

Once the DMVS received the form from QBE in March 2002, it became responsible for ensuring that it properly processed the form. *Thompson v. Gen. Security Ins. Co.*, 286 Ga. App. at 587 (1). Brown, as the plaintiff claiming that the insurance was still in effect at the time of the collision under the continuing coverage doctrine, had the burden of proving what he claims happened to the form after QBE filed it in March 2002: that the DMVS rejected the form and sent it back to QBE and that QBE failed to resubmit the form in a timely manner. Brown failed to present any competent evidence to support such a finding.

The undisputed evidence in this case showed that there were no written policies or procedures in place at the DMVS in 2002 to deal with a Form K that fully complied with the applicable rules and was stamped as filed in the DMVS office, but which contained a single reference to the "PSC" instead of the "DMVS." Even assuming without deciding, however, that the DMVS was authorized to reject QBE's Form K under these circumstances after it assumed control over the document, there is no competent evidence to show that the DMVS, in fact, rejected the form and sent it back to QBE for correction. There are no notations in the agency's file on the trucking company or the agency's computer system, nor any records of any correspondence between the DMVS and QBE, concerning the agency's handling of the Form K between March 2002 and March 2005.[9] Further, former DMVS employee Dewberry admitted that she did not have any actual knowledge about QBE's Form K and only "assumed" that another, unidentified DMVS employee returned the form to QBE in March 2002. Given the lack of any documentation in the agency's files regarding the handling of the form after the agency assumed control over it in March 2002, however, there is nothing to prove that it is more likely that the agency mailed the form back to

---

[9] See *Thompson v. Gen. Security Ins. Co.*, 286 Ga. App. at 585 (discussing PSC procedures for handling Form Ks in 2001 and noting that, if the agency rejected a Form K, it notified the insurance company by mail and put a copy of the rejection letter in the trucking company's file).

QBE to be amended than that the agency lost or misfiled the form.

Thus, the court's finding that the DMVS sent the Form K back to QBE and that QBE failed to timely correct and resubmit it to the agency is based solely upon mere conjecture by an employee who admittedly had no memory of handling the form in 2002 and who only assumed that another, unidentified employee acted in accord with her understanding of unwritten policies and procedures. Therefore, the court's finding cannot stand. See *State v. Rackoff*, 264 Ga. App. 506, 508, n. 2 (591 SE2d 379) (2003) (there was no evidence that officers took a breathalyzer out of service after the defendant's breath test because it was giving faulty breath alcohol test results; thus, the court's assumption that the machine had been malfunctioning was entirely speculative); *S. A. Lynch Corp. v. Stone*, 211 Ga. 516, 520 (1) (87 SE2d 57) (1955) (an affiant's conclusion that certain parties had reached an oral agreement was inadmissible when the affiant was not present when they reached the agreement and had no reason to know that they had reached an agreement "other than by his own guess work or deduction").

Consequently, given the undisputed direct evidence that QBE timely filed the Form K with the DMVS in March 2002, the court erred in concluding that the insurance policy issued by QBE to Browning Trucking Company was still in effect at the time of Brown's collision.

2. Given our decision in Division 1, supra, QBE's remaining enumeration of error is moot.

### Case No. A08A2416

3. Brown contends that the trial court erred in concluding that, if QBE's coverage of Browning Trucking Company was extended under the continuing coverage doctrine due to its failure to timely file a Form K, but Browning Trucking Company was not in compliance with the terms of the policy at the time of the collision, QBE's liability would be limited to the statutory minimum requirements for coverage, rather than the policy limits. Given our ruling in Division 1, supra, this alleged error is moot.

*Judgment reversed in Case No. A08A2417. Case No. A08A2416 dismissed as moot. Miller, C. J., and Blackburn, P. J., concur.*

DECIDED MARCH 26, 2009 —
RECONSIDERATIONS DENIED APRIL 8, 2009

*Sell & Melton, Jeffrey B. Hanson, Mitchel P. House*, for appellant.

*Dennis, Corry, Porter & Smith, John D. Dixon*, for appellee.