24493. COLLINS *v.* BAKER *et al.*

DECIDED AUGUST 29, 1935.

*Sydney H. Baynes,* for plaintiff. *J. K. Jordan,* for defendants.

MACINTYRE, J. The only question for determination in this case is whether or not the trial judge erred in dismissing the petition on demurrer. The petition is substantially as follows:

1. The defendants "are Mrs. M. F. Baker, and J. W. Baker, of said State and county."

2. "That on or about April 1, 1934, plaintiff [Tom Collins] rented an apartment at 72 Woodward Avenue S. E., in the City of Atlanta, Georgia, which is owned and controlled by Mrs. M. F. Baker . . ."

3. "That on or about April 1, 1934, plaintiff negotiated with J. W. Baker, one of the defendants herein, for the rental of" said apartment.

4. "That J. W. Baker held himself out to plaintiff as the agent of said property for his mother, Mrs. M. F. Baker, and that . . J. W. Baker rented said property to plaintiff as the agent for . . Mrs. M. F. Baker."

5. "Said plaintiff agreed to pay the said Bakers the sum of $1.50 . . per week rental for said premises."

6. "Plaintiff rented said property from said defendants and occupied the same up to and including May 8, 1934, as a tenant at will."

7. "That on the evening of May 7, 1934, about 10 p. m., . . J. W. Baker came to plaintiff's home [said apartment] . . , and padlocked the front door of plaintiff's apartment."

8. "That the said Baker, in padlocking the said premises, . . acted as agent for the said Mrs. M. F. Baker, and in his individual capacity as a real estate agent having the custody, possession, and supervision over said premises."

9. "That when plaintiff returned home later in the evening of

May 7, 1934, and after the same was padlocked by the said Baker . . , plaintiff entered his apartment by removing or breaking the padlock placed on his front door . . ."

10. "That plaintiff, after removing said padlock·from the door, entered his apartment and retired for the night."

11. "That on the morning of May 8, 1934, about 3:30 a. m., the said J. W. Baker, in custody and with two policemen of the City of Atlanta, to wit, C. P. Hill and W. J. Stallings, came to plaintiff's home [said apartment], and aroused plaintiff from his sleep, and arrested him . . and carried him to the police barracks . . in the City of Atlanta."

12. "That on the morning of May 8, 1934, about 8:30 a. m., plaintiff was rushed to and carried before the recorder of the City of Atlanta, John L. Cone, and tried before said recorder for the offense of 'disorderly conduct' and/or breaking and entering."

13. "That at said alleged mock trial plaintiff pleaded 'not guilty.'"

14. "That at said trial the said J. W. Baker testified that the plaintiff . . had rented the premises from him, but that plaintiff was in arrears in rent."

15. "That as a result of said testimony the said plaintiff was convicted of some charge of which he was not informed, and given a sentence of twenty-nine . . days in the city prison in the City of Atlanta, commonly . . known . . as the stockade."

16. "That before said sentence was imposed upon plaintiff, said recorder inquired of the said J. W. Baker . . whether or not to confine plaintiff in the stockade, or to release him, and . . the said Baker replied, 'Send him to the stockade.'"

17. "That during and at said trial plaintiff was given no opportunity to employ counsel, or to make any statement other than when plaintiff was first arrived he was informed by the recorder that he was charged with 'disorderly conduct,' and was asked by the recorder whether he pleaded 'guilty' or 'not guilty.'"

18. "To said inquiry plaintiff answered that he was not guilty to any crime, but he did commit the act of removing the padlock and entering his own home, the said padlock having been placed on the said door by the said Baker."

19. "That as a result of said mock hearing or trial, plaintiff was confined in the stockade as aforesaid on said May 8, 1934, and

remained therein until May 15, 1934, at at which time he was released, as more fully set out hereafter."

20. On May 11, 1934, plaintiff filed habeas-corpus proceedings against J. C. Ellis, superintendent of prisons in the City of Atlanta, and plaintiff was ordered to be brought before the Honorable Virlyn B. Moore, judge of the superior court of the Atlanta Circuit, for a hearing: "a copy of said habeas corpus, together with the judge's order thereon," being "attached hereto and marked exhibit 'A.'"

21. A hearing was had on said habeas corpus on May 14, 1934, wherein Mr. James L. Mayson appeared as the attorney for the City of Atlanta and J. C. Ellis.

22. That on May 15, 1934, Judge Moore passed an order releasing plaintiff from said stockade, "which order was agreed to by city attorney James L. Mayson," a copy of said order being attached hereto as an exhibit.

23. "That on the morning of May 8, 1934, after plaintiff had been tried, convicted, and sent to the city prison, . . the said J. W. Baker again entered plaintiff's apartment, or home, and removed his furnishings on the street, and on the front porch of said premises."

24. "That the padlocking of plaintiff's home or apartment by the said J. W. Baker, in his own capacity and as agent for his mother, Mrs. M. F. Baker, was a wilful and malicious trespass against the plaintiff's rights."

25. "That the entering of plaintiff's home or apartment by the said Baker, on the early morning of May 8, 1934, in custody with two policemen . . , was a wilful and malicious trespass against petitioner's rights."

26. "The entering of plaintiff's home or apartment on the morning of May 8, 1934, after plaintiff had been confined to the . . stockade, was a wilful and malicious trespass and violation of the plaintiff's rights."

27. "Plaintiff shows that he had paid all rent accrued on said apartment . . up to and including May 5, 1934, the last payment of $1.50 . . being made to the said J. W. Baker on said May 5, 1934, or the Saturday preceding the padlocking of said premises by said Baker."

28. "Neither a dispossessory nor a distress warrant was issued

or served against him by any officer authorized by law so to do; and plaintiff shows that neither said J. W. Baker nor Mrs. M. F. Baker has made oath that plaintiff was holding over, or had failed to pay rent for the said premises, before any judge of the superior court, municipal court of Atlanta, or any justice court in the County of Fulton."

29. "That at the said time the said Baker padlocked said premises as aforesaid, and entered the premises and removed plaintiff's furniture as aforesaid, . . J. W. Baker knew, or should have known by the exercise of ordinary care, that neither he nor his mother, Mrs. M. F. Baker, had cause to be issued and served upon plaintiff any distress or dispossessory warrant."

30. "Said premises had not been turned over to or delivered or released to either of said Bakers."

31. "Plaintiff sues for attorney's fees in the sum of $25, which he is required to incur in the prosecution of said habeas-corpus matter; for the further sum of $15 for the loss of his services for a period of a week, while he was confined in the city prison; and also the further sum of $3000 for punitive and vindictive damages by reason of the trespass herein alleged against plaintiff's rights."

Paragraph 14 of the petition for habeas corpus was: "Petitioner shows that the rent owing or due the said Baker or Bakers for the said premises occupied by him for a home has not been paid in full." The judge's order in the habeas-corpus proceeding recites that "said sentence was excessive," and "therefore it is . . adjudged that the defendant, J. C. Ellis, superintendent of prisons of the City of Atlanta, release on this date, instanter, said prisoner from further custody, and said sentence of twenty-nine days imposed upon said Tom Collins is remodeled and reduced to present service, after it appearing that the city attorney . . is agreeable to this procedure."

The demurrer is substantially as follows:

1. The petition is duplicitous, because it contains in a single count "two wholly separate and distinct supposed causes of action, to wit: (a) an action of malicious criminal prosecution, and (b) an action for trespass."

2. That in so far as the petition "asserts liability for malicious prosecution . . , it affirmatively appears that plaintiff was actually convicted of the offense charged, and that the prosecution

terminated adversely to him, which conviction was and is conclusive of probable cause for instituting the prosecution complained of."

3. The defendants "demur generally to said petition in so far as it seeks recovery for trespass, upon the grounds: (a) because by paragraph fourteen of plaintiff's petition for habeas corpus, attached as exhibit A to his petition in this cause, it appears that plaintiff was in fact in arrears in rent, which fact justified these defendants in making a peaceable re-entry upon their property; and (b) because the only damages sought to be recovered for trespass are punitive damages, and no facts authorizing the imposition of punitive damages are set forth in the petition."

4. "They demur to said petition in its entirety, because same sets forth no cause of action against these defendants or either of them."

The judgment upon the demurrer was as follows:

"1. Paragraphs one (1) and two (2) of the demurrer are sustained, and all allegations of the petition seeking the recovery of damages on account of the alleged arrest, trial, conviction, sentence to the stockade, service of the sentence, and damages incident thereto, are stricken from the petition.

"2. Paragraphs three (3) and four (4) of the demurrer are sustained, and the case is hereby dismissed. Judgment against the plaintiff for costs. The only item of damage sued for on account of alleged trespass is punitive or vindictive damages; and the court is of the opinion that the remaining allegations of the petition, which relate to that phase of the case, are insufficient to authorize the recovery of such damages."

In his petition the plaintiff not only sets out with considerable detail the circumstances relating to his arrest, "mock trial," conviction, imprisonment, and discharge from prison, but also seeks to recover "$15 for the loss of his services for a period of a week while he was confined in the city prison," and "$25 which he is required to incur in the prosecution of said habeas-corpus matter." Under the rule that the petition must be construed most strongly against the pleader, we hold that the court properly held that the petition was duplicitous and sustained the first paragraph of the demurrer. We are also satisfied that the second paragraph of the demurrer was properly sustained.

We come next to the court's ruling upon paragraph 3 of the demurrer. "In every tort there may be aggravating circumstances, either in the act or the intention; and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." Code of 1933, § 105-2002. "Whatever may have been, at common law, the right of a landlord with respect to removing, without resort to legal proceedings, a tenant holding beyond his term, in view of the statutes of this State providing for the summary ejection of tenants under legal process, and the public policy thereby manifested, a landlord who, without such process, forcibly and violently ejects a tenant and his personal goods from the rented premises is liable to the latter in an action of trespass, although the tenant was holding over beyond his term, was in arrears for rent, and had received legal notice to quit." *Entelman* v. *Hagood*, 95 *Ga.* 390 (22 S. E. 545). In one of the cases cited to support that ruling (Reeder *v.* Purdy, 41 Ill. 279), the court said: "In this State it has been constantly held that any entry is forcible, within the meaning of this law, that is made against the will of the occupant." The ruling in the *Entelman* case was followed in *Moseley* v. *Rambo*, 106 *Ga.* 597 (32 S. E. 638), where this language occurs: "There may be in such cases aggravating circumstances in the act or intention of the trespasser, which would authorize a recovery though no injury to person or property had occurred." "Bare possession, either of land or a chattel, authorizes the possessor to recover damages from any person who wrongfully in any manner interferes with such possession." *Daniel* v. *Perkins Logging Co.*, 9 *Ga. App.* 842 (72 S. E. 438). "If a person commits a trespass with knowledge that he is acting without right, exemplary or punitive damages may be awarded." *Savannah Electric & Power Co.* v. *Horton*, 44 *Ga. App.* 578 (2) (162 S. E. 299), and cit. In *C. & W. Ry. Co.* v. *McElmurray*, 16 *Ga. App.* 504 (85 S. E. 804), the court recognized the doctrine that great repetition of merely negligent torts may warrant the recovery of damages "to deter [the wrong-doer] from continuing to harrass and annoy the plaintiff and to destroy his property." "To enter a dwelling-house without license is in law a trespass." Adams *v.* Freeman, 12 Johns. (N. Y.) 408 (7 Am. D. 327). In that case (which was cited with approval in *Markham* v. *Brown*, 37 *Ga.* 277,

281, 92 Am. D. 73), the defendant merely entered the house of the plaintiff without permission, and remained there for an hour after being ordered to leave, "without doing any other injury, and then departed." The judgment awarding a nonsuit was reversed. In Strauel v. Lubeley, 186 Mo. App. 638 (172 S. W. 434), the "defendant . . had gone to the house during the absence of the plaintiff, found a key that unlocked the door, entered and removed all of the plaintiffs effects from the building, and placed them outside the house on the lot." The tenant claimed certain special damages which were not proved, and "$500 exemplary or punitive damages." It was held that "this was a high-handed attempt by the defendant to take the law into his own hands," and that the court was authorized to charge upon punitive damages.

The petition in the instant case sets out repeated positive torts, each of which is alleged to be "a wilful and malicious trespass against the plaintiff's rights." The "aggravating circumstances" necessary to warrant the recovery of damages under our Code of 1933, § 105-2002, may appear "either in the act or the intention." "To authorize the imposition of punitive or exemplary damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." So. Ry. Co. v. O'Bryan, 119 Ga. 147 (45 S. E. 1000). Viewing the petition in the instant case in the light of the authorities cited, we think that it sets out a case wherein punitive damagess might be recovered. Neither do we think that subdivision (a) of paragraph 3 of the demurrer is meritorious. It follows that the court erred in sustaining the general demurrer and dismissing the petition.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*