A06A0699. TACON et al. v. EQUITY ONE, INC.

(633 SE2d 599)

BARNES, Judge.

Thomas Tacon and Charlotte Tacon sued Equity One, Inc., Century 21 Tri-City Realty, Debbie Muldoon, and REO National for trespass and conversion. The defendants answered, and following discovery, Equity One moved for summary judgment. The trial court granted the motion, and the Tacons appealed. For the reasons that follow, we affirm.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Goode v. City of Atlanta,* 274 Ga. App. 233 (617 SE2d 210) (2005).

So viewed, the evidence shows that Equity One held a deed to secure debt on residential real property owned by Thomas Tacon. Tacon became delinquent in his mortgage payments, and in October 2001, Equity One declared the mortgage in default and demanded payment of the balance in full. In December 2001, Equity One advised Tacon that it had referred the loan to its attorney to begin foreclosure proceedings against the property.

---

Equity One contacted First American Field Services to look at the property and determine whether it was occupied or vacant. A First American employee drove by the property and reported to Equity One that it was occupied. Equity One contacted REO National on the same day to obtain a "broker's price opinion," or BPO, on the property, which is an analysis by a licensed real estate person resulting in an appropriate listing price for the property. REO hired Century 21 to assess the exterior of the house and to verify it was vacant. Muldoon, a Century 21 agent, went to the property in early January and took exterior photographs. She looked in the windows and found that the house contained "a lot of junk" and debris but no beds or couches, the electric meter was not running, the backyard contained a moldy mattress, the back deck was rotting, the wood around the back door was damaged, and the house appeared to be unoccupied. Muldoon e-mailed pictures of the exterior and reported to REO that the house appeared vacant.

REO relayed that information to Equity One, who then authorized REO to have the local agent, Muldoon, enter the house to secure the premises by rekeying the locks, "winterizing" the pipes by blowing out air and filling them with antifreeze so they would not freeze, and inspecting the interior to better determine its value. REO in turn relayed that information to Century 21 and Muldoon, who returned to the property on January 8, 2002 to secure it, winterize the pipes, and inspect the interior.

The house had been rekeyed, but when Muldoon returned, she found the back door open. She left immediately, closing and locking the door, and reported to REO that the house was not secure. REO instructed her to return and secure the property, and when she did the next day, January 9, 2002, the back door was open again.

Muldoon talked to a neighbor, who said a tenant had been staying at the house but had been gone for several months. Muldoon was concerned about vandals and thieves coming and going. She also realized the electricity was on because the well was pumping water, and then saw that the main breaker was flipped on and wires were hanging from the box. She directed her assistants to load four items of furniture she thought would be of value to the owner, locked the door again, and left without winterizing the pipes because she was concerned about safety. She put the items — an entertainment center, a computer desk, a kitchen chair, and a plant stand — into Century 21's storage and notified REO, as she thought the breaker box in conjunction with a leaking roof was dangerous. She did not think anyone was living in the house, which had no heat, but thought someone had been breaking in.

Muldoon also notified Tacon that the property appeared to have been "ransacked," but when Tacon arrived, his front door key would

not work. He managed to get inside and discovered several items missing. A neighbor told him that a Century 21 agent had been there asking if the property was occupied, and Tacon accused Muldoon of robbing him. He had a sheriff meet him at the property, but the sheriff was told that the house had already been foreclosed on and told Tacon not to return to the property or he would be arrested for trespass. He called REO that night but the person he talked to was "belligerent" and would not help him.

Tacon contacted a lawyer, who filed this suit less than two weeks later. The items Muldoon placed into storage were returned to Tacon, but he contends that much of his personal property remains missing. He admitted that no one was living on the property when Muldoon entered the house, and has "no complaints" about the property being rekeyed, but did "when somebody's stealing my property." When asked why he was suing Equity One, he replied that he had "no idea," and that all he knew was that someone broke into his place and took his belongings. He had "no quarrel" with Equity One beginning foreclosure proceedings because he was delinquent in his mortgage payments, the last one being made before October 2001, and he had not responded to Equity One's letters regarding his default. In fact, Tacon made no mortgage payments at all during the course of this litigation, and Equity One eventually foreclosed on the property over Tacon's objections.

Tacon sued REO, Century 21, and Muldoon for trespass. He also sued Equity One, contending that it was "negligent in failing to establish and follow procedures and policies which would prevent the type of wrongs suffered by the plaintiffs herein." He also sought punitive damages and damages for mental anguish.

REO, Century 21, and Muldoon moved for summary judgment, which the trial court denied. The court found that

> nothing in Georgia law … grants immunity from liability for [trespass and conversion] claims to real estate professionals who enter private property in good faith, although evidence Muldoon and Century 21 met real estate industry standards in determining the legal status of the property may be admissible in determining whether they were liable for punitive damages,

citing *Gomez v. Julian LeCraw & Co.*, 269 Ga. App. 576 (604 SE2d 532) (2004). As this court noted in *Gomez*, "[u]nder Georgia law, … a trespasser is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by another." (Punctuation, footnote and emphasis omitted.) Id. at 578 (1) (a). The trial court in this case continued:

[t]he standard is whether a reasonable person presented with the facts known to defendants would believe that the actions they took were reasonably related to protecting the property, pursuant to the contractual agreement between plaintiff Thomas Tacon and Equity One. While the jury could conclude actions by REO, Century 21, and Muldoon were authorized under the deed to secure debt and thus not tortious, the evidence of record did not demand such a conclusion, as a jury could conclude defendants took actions that went beyond what was authorized by the deed to secure debt.

Equity One also moved for summary judgment, arguing that, by the terms of the security deed, Tacon waived his absolute right to exclusive use and possession of the property if he defaulted on the loan. In the deed, Tacon agreed to pay the principal and interest on the debt when it was due, and agreed not to "destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property." The deed further provides:

[i]f Borrower fails to perform the covenants and agreements contained in this Security Instrument, the Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien, which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Tacon was admittedly in default, and Equity One argued that it was thus allowed to "take action to preserve its interest in the property." The company contended that its actions in directing REO to secure the property were permitted by the security deed, and thus it was not liable for trespass. Tacon responded that Equity One, as the principal, had a duty to ensure that all its agents understood what it meant by "vacant property," and that First American's report that the property was occupied put Equity One on notice that it should not have authorized anyone to enter the premises.

The trial court held that no evidence showed that Equity One authorized its agents to remove Tacon's personal property. Further,

[t]he question is whether a lender who possessed conflicting knowledge which produced an uncertainty as to whether premises were occupied would exceed its contractual rights

by having agents enter and secure them. The photographs of the residence at the time they were entered by Equity One's purported agents show that window and door coverings had been removed, which rendered the apparently unoccupied, "trashed" character of the premises obvious to potential vandals. It is undisputed the premises were not locked. From this evidence, the Court concludes that what Equity One directed to be done by agents, entering and re-keying the residence, must be found to be consistent with its exercise of its contractual rights as a matter of law. Therefore the Motion for Summary Judgment of Equity One, Inc. is GRANTED and as to said Defendant only this action is DISMISSED.

Tacon enumerates 11 errors on appeal, basically arguing that the trial court erred in failing to find certain issues of fact or in ruling on issues not argued on summary judgment. We will combine these enumerations for discussion where appropriate.

Tacon argues that the trial court erred in granting summary judgment to Equity One and in applying OCGA § 10-6-61 sua sponte. He also contends that the court misconstrued the security deed language; that issues of fact exist regarding agency, Equity One's negligent failure "to have proper proceedings in place" or "properly communicate with agents," and its failure to return possession of the property and personal items upon learning of the trespass; that Equity One's admission that no one should have entered Tacon's house raised a jury issue; that the court erred in its factual finding that no one contested that the house was unlocked; and that Equity One's "manufacture of evidence" was an admission "that it could not win unless it used false evidence."

1. Tacon contends that the trial court erred in applying OCGA § 10-6-61 sua sponte. The Code section at issue provides that "[t]he principal shall not be liable for the willful trespass of his agent unless done by his command or assented to by him." We note that the record on appeal contains no transcript of the oral argument hearing, which the trial court considered in issuing his ruling. Thus, we cannot determine exactly what either party argued at the hearing. The issue of agency, however, is clearly raised throughout the pleadings. For example, Tacon argued in his response to Equity One's motion that the company was liable under "agency doctrine." Further, the trial court addressed the issue of agency in denying summary judgment to REO, Century 21, and Muldoon. In considering whether Equity One was liable for actions committed by the other defendants which it did not directly authorize, OCGA § 10-6-61 is the applicable law, and the trial court did not err in applying it.

2. Tacon asserts that the trial court misconstrued the security deed language to find that Equity One was allowed to enter his property without his permission.

Liability for a trespass upon real property produced by a voluntary act is absolute and does not have to be grounded in negligence, so long as the act causing the trespass was intended. *Brooks v. Ready Mix Concrete Co.*, 94 Ga. App. 791, 793 (1) (96 SE2d 213) (1956). This common law rule is codified in OCGA § 51-9-1, which provides that every act that unlawfully interferes with a citizen's right of enjoyment of his private property "is a tort for which an action shall lie."

> Bare possession, either of land or a chattel, authorizes the possessor to recover damages from any person who wrongfully in any manner interferes with such possession. If a person commits a trespass with knowledge that he is acting without right, exemplary or punitive damages may be awarded. . . . To enter a dwelling-house without license is in law a trespass.

(Citations and punctuation omitted.) *Collins v. Baker*, 51 Ga. App. 669, 674 (181 SE 425) (1935); see also *Gill v. First Christian Church*, 216 Ga. 454 (2) (117 SE2d 164) (1960).

The common law right to the exclusive use and possession of property may be modified by agreement, in which the landowner grants permission to enter his property under certain circumstances. *Smith v. Fischer*, 59 Ga. App. 791 (1 SE2d 684) (1939) (agreement with landowner to allow neighbor to take stone from property was defense to landowner's heir's trespass suit). The trial court found in this case that the deed to secure debt gave Equity One the right to enter the property under certain circumstances. The deed provides that if Tacon defaulted, Equity One "may do and pay for whatever is necessary to protect the value of the Property," and that these actions "may include" the four actions recited: paying sums secured by a lien; appearing in court; paying reasonable attorney fees; and entering the property to make repairs.

Tacon contends that, upon his default, the language in the deed allowing Equity One to do "whatever is necessary to protect the lender's property" was limited by the doctrine of "ejusdem generis" to the four actions listed in the deed, and thus, Equity One was not entitled to enter his property to secure it. We disagree. "Ejusdem generis" means "of the same kind or class," (citation and punctuation omitted) *Dept. of Transp. v. Montgomery Tank Lines*, 276 Ga. 105, 106, n. 5 (575 SE2d 487) (2003), and thus limits Equity One to the *kinds* of actions listed in the contract, but does not limit it to those four actions only. This doctrine does not mean that the general term

is limited to the *particular* items recited; it means that the general term is limited to items *similar* to the particular items recited. For example, in *State of Ga. v. Mulkey*, 252 Ga. 201, 203 (2) (312 SE2d 601) (1984), the Supreme Court held that a statute allowing a criminal defendant to discover "any written scientific reports" generated by the State means "any scientific reports" that are regularly generated by the State, such as autopsy and blood alcohol test reports, but not an expert's ignition tests that were not performed by the State. Id. at 202-203. In this case, applying the doctrine of ejusdem generis, entering the property to secure it is similar to the enumerated action of entering the property to repair it and thus is allowed under the deed.

Further, while "under general rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive," (citation omitted) *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 661 (2) (516 SE2d 371) (1999), when construing a contract "to determine what meaning the word 'may' imparts, it must always be considered in connection with its context and subject matter." (Punctuation and footnote omitted.) *Holden v. Smith*, 236 Ga. App. 205, 207 (511 SE2d 569) (1999). In this case the specific provisions are clearly examples of what the lender *may* do or is permitted to do if the borrower defaults, rather than an exclusive list of actions. The trial court did not err in its construction of the contract.

The holding in *Mayor &c. of Savannah v. Savannah Elec. & Power Co.*, 205 Ga. 429, 437 (54 SE2d 260) (1949), cited by Tacon, is not dispositive here, as the facts are entirely different. In that case, the court held that a street car company taxed under a general provision was not also subject to an additional tax under a subsection that did not expressly apply to street cars. Id.

3. Tacon contends that issues of fact exist regarding agency, Equity One's negligent failure "to have proper proceedings in place" or "properly communicate with agents," and its failure to return possession of the property and personal items upon learning of the trespass, and that these issues were not before the court when it ruled on Equity One's motion for summary judgment. These issues are all related to Tacon's claim that Equity One or its agents committed a trespass for which Equity One was responsible and were thus properly disposed of when the trial court ruled on Equity One's motion for summary judgment.

Equity One's agent testified that he gave REO permission to enter the property based on REO's representation that the property was vacant and unoccupied. Based on our holdings in Divisions 1 and 2, Equity One was entitled to enter the house, regardless of whether

it still held personal items, to secure the premises and protect its interest in the property.

Further, our de novo review of the record shows that no evidence establishes that Equity One directed Muldoon to remove Tacon's property for safekeeping. Muldoon testified no one at Equity One directed her to remove anything from the house, and REO's agent testified he never advised Muldoon to remove anything from the house. Both Mr. and Mrs. Tacon admitted they had no evidence that Equity One authorized anyone to remove the personal property.

While Tacon argues that Equity One never defined what a "vacant" house was and never advised its agents not to enter an unoccupied house that still contained furniture, under the contract terms, Equity One was entitled to enter the property to secure it even if it was not completely empty. Additionally, even if First American reported to Equity One that the house was occupied, that information was inaccurate as Tacon himself admitted that no one was living on the property when Muldoon entered it. While Equity One's foreclosure specialist testified that he would not have authorized REO to enter the house if he had known it contained personal property, the security deed gave Equity One the right to enter and secure the premises upon Tacon's default regardless.

Finally, Tacon contends that an issue of fact remains regarding Equity One's failure to return possession of the property and personal items to him upon learning of the trespass. The evidence establishes, however, that Tacon's attorney faxed a letter to all of the defendants two days after this incident, and at that point Equity One's foreclosure specialist, Century 21, and Muldoon turned the matter over to their lawyers. Tacon filed suit 11 days later, at which point the lawyers conferred about returning the property and keys to Tacon. Century 21's employees subsequently returned the items from storage to the Tacons' residence; thus no issue remains regarding whether Equity One returned possession to Tacon.

4. Tacon contends that Equity One's admission that no one should have entered Tacon's house raised a jury issue about whether Equity One had a right to enter the house. This enumeration is meritless in light of our previous ruling in Division 2 that Equity One had the right to enter the house pursuant to the security deed.

5. Tacon disputes the court's factual finding that no one contested that the house was unlocked. While Tacon testified that the house was locked when he checked it a few days before the incident, and that it was locked when he returned after Muldoon reported that the house had been ransacked, no evidence disputes Muldoon's testimony that the back door was wide open the last two times she went there. She locked the door on both occasions, so the fact that it was locked when Tacon arrived does not contradict her testimony. Even if

the trial court erred in finding that this issue was uncontested, Equity One still had a right to enter the home and secure the premises pursuant to the security deed language, as discussed in Division 2.

6. Finally, Tacon contends that Equity One's "manufacture of evidence" was arguably an admission "that it could not win unless it used false evidence." Equity One's foreclosure specialist admitted that, after this incident, he back-dated a letter to REO giving them permission to rekey and secure the premises at issue based on information he received that the premises were vacant. He also noted that the letter said that First American reported the property as vacant, but clarified in his deposition that he intended to say that REO reported the property as vacant. It is undisputed that REO reported to Equity One that the property was vacant, and that Equity One directed REO to enter the property based on that representation. Tacon argues that Equity One is "presumed liable" because of this "admission." Again, this evidence does not affect whether Equity One had permission to enter and secure the property under its lease, as discussed in Division 2, and therefore does not lead us to conclude that the trial court erred in granting summary judgment to Equity One.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED JUNE 28, 2006.

*Killian & Boyd, Robert P. Killian*, for appellants.
*Taylor, Odachowski, Sperry & Crossland, Donna L. Crossland, Drew, Eckl & Farnham, Peter H. Schmidt II*, for appellee.