**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**January 16, 2020**

# In the Court of Appeals of Georgia

A19A2137. FLOYD et al. v. CHAPMAN.

HODGES, Judge.

This dispute concerns a gravel driveway which connects a house constructed by appellants Marshall Floyd, Jr. and Kathleen Floyd (the "Floyds") to a roadway by crossing over land currently owned by appellee James T. Chapman. Both the Floyds and Chapman acquired their respective land from Marshall Floyd, Jr.'s stepmother, Patricia Densmore Floyd ("Patricia"). The Floyds petitioned the Superior Court of Dawson County to recognize that they had acquired a private right of way over Chapman's land. Chapman answered and filed a counterclaim, seeking to find the Floyds liable for trespass and to issue an injunction to prevent the Floyds' use of the driveway. The trial court conducted a bench trial and found that the Floyds had not established a private right of way across Chapman's property; thus, it found the

Floyds had trespassed upon Chapman's property and granted Chapman the injunction he requested. Additionally, the trial court ordered the Floyds to remove an access gate installed on the driveway as well as underground utility lines they had installed along the length of the driveway. The Floyds appeal from this order, and for the reasons that follow, we affirm in part and reverse in part.

Under Georgia law,

> [t]he [trial] court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of review applies where the appellate court determines that the issue was of law, not fact.

(Citation and punctuation omitted.) *Savannah Jaycees Foundation v. Gottlieb*, 273 Ga. App. 374, 375-376 (1) (615 SE2d 226) (2005).

So viewed, the record demonstrates that on May 25, 2006, Patricia gifted the Floyds a 15-acre tract of land in Dawson County from a larger parcel she owned. The Floyds built a house on their land, which previously had no structure built on it. The Floyds' parcel has road frontage, but rather than construct a new path to connect their home to the road, the Floyds utilized an old logging road which ran across their property as well as the property retained by Patricia. The Floyds hauled gravel to the property to improve the driveway and installed an access gate on the driveway. The

2

Floyds requested that Patricia grant an easement to the utility company for the installation of underground lines to the Floyds' home, and Patricia agreed. The Floyds, however never asked Patricia's permission to utilize her land for their driveway, nor did they ever tell her they believed they had a legal right to utilize her land. According to the Floyds, they did not seek Patricia's permission to use and improve the logging road as their driveway because they assumed that Patricia would grant them the remainder of her land at some point in the future. Patricia never conveyed to the Floyds an easement for the driveway across her land, but she also never told them that they could not use her land for the driveway. Patricia visited the Floyds at their home and was aware of the existence of the driveway, but she assumed it was contained entirely on the Floyds' property.

In 2014, Patricia informed the Floyds that she intended to sell the remainder of the parcel from which the Floyds' tract was taken. At that time, Marshall Floyd, Jr. informed Patricia that the Floyds' driveway crossed her property and asked her for an easement. This was the first time that Patricia realized the driveway encroached on her property, and she never responded to the request for an easement.

On February 24, 2017, Patricia conveyed the remainder of her parcel to Chapman via a limited warranty deed which provided that it was subject to all

3

easements for roads and utilities in use or of record. Chapman testified that he is in the timber business and he intends to use the driveway for logging his property. Although the parties attempted to work out an agreement for use of the driveway, they were unable to do so due to Chapman's intended use of his property, and the Floyds filed suit asking the trial court to recognize that they obtained a private right of way over Chapman's property pursuant to OCGA § 44-9-1.[1] Chapman counterclaimed for trespass and for an injunction to prevent the Floyds from using the driveway on his property for travel or the underground utility lines.

The trial court conducted a bench trial at which Patricia, Marshall Floyd, Jr., and Chapman testified. After hearing the testimony and reviewing the exhibits submitted by the parties, the trial court found that the Floyds had not established a prescriptive right of way. Specifically, the trial court made findings concerning the historical use of the land, and determined that Chapman's property constituted wild, as opposed to improved, land. Consequently, the trial court concluded that, to establish a prescriptive easement, the Floyds' use of the gravel driveway would have

---

[1] In their petition before the trial court, the Floyds also asserted that they were entitled to a private right of way by necessity because they were otherwise landlocked. The Floyds did not pursue this argument at the bench trial and they have likewise abandoned it on appeal.

4

needed to meet the requirements of OCGA § 44-9-1 for a period of 20 years. As a result, the trial court denied the Floyds all of the relief they sought, found them to have trespassed on Chapman's land, and issued a temporary and permanent injunction preventing the Floyds from accessing the portion of the driveway located on Chapman's land. The trial court also ordered the Floyds to remove both the access gate they installed on the driveway, as well as the underground utility lines running along the driveway. The Floyds now appeal.

1. In two related enumerations of error, the Floyds contend that the trial court erred in finding that Chapman's property was wild land and erred in failing to recognize the gravel driveway as an easement in use or of record at the time Chapman purchased his property.[2] We find no error.

Georgia law recognizes the ability to obtain a private way over the land of another "from prescription by seven years' uninterrupted use through improved lands or by 20 years' use through wild lands[.]" OCGA § 44-9-1. "The burden of establishing prescriptive title lies on the plaintiff." *Murray v. Stone*, 283 Ga. 6 (1)

---

[2] "For convenience of discussion, we have taken the enumerated errors out of the order in which [the] appellant[s have] listed them and have grouped together related enumerations." *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985).

5

(655 SE2d 821) (2008). In order to establish the existence of a private way over Chapman's land, the Floyds were required to show (1) that they, or a predecessor in title, had been in uninterrupted use of the alleged private way for the period of time required by OCGA § 44-9-1; (2) that the private way is no more than twenty feet wide, and that it is the same twenty feet originally appropriated; and (3) that they have kept the private way in repair during the period of uninterrupted use. See *Norton v. Holcomb*, 285 Ga. App. 78, 81 (2) (646 SE2d 94) (2007). Moreover, "[a] claim of prescriptive title requires proof that the possession did not originate in fraud and was (1) public; (2) continuous; (3) exclusive; (4) uninterrupted; (5) peaceable; and (6) accompanied by a claim of right. The use must also be adverse rather than permissive." (Citations and punctuation omitted.) Id. at 80-81 (2). However,

> [t]o allow a person to acquire prescriptive rights over the lands of another is a harsh result for the burdened landowner. Thus, Georgia courts have strictly construed the elements of OCGA § 44-9-1 against the party who asserts a right of entry over the lands of another. If the prescriber fails to show any of the elements necessary to establish prescriptive rights, he cannot recover.

(Citation omitted.) Id. at 81 (2).

6

It is undisputed that the Floyds have been regularly using and occasionally improving the driveway for more than seven years but less than twenty years. Consequently, of particular importance here is whether Chapman's property is wild or improved land. "The land which the statute designates as 'wild' is that which is located separate and apart from lands which are partly in cultivation. It is a segregated tract of land, remaining, as it were, in a state of nature, un[e]nclosed, and with no indicia pointing to use by the owner." *Hopkins v. Roach*, 127 Ga. 153 (56 SE 303) (1906).

Here, the trial court, sitting as the trier of fact, concluded that the driveway was an old logging road that had not been routinely maintained prior to the Floyds' acquisition of their property. Although timber on Chapman's land had been subject to limited harvesting in the past, the evidence at trial did not demonstrate how often or when the timber was last harvested. The trial court noted that the land had been used sparingly, primarily to access a rustic hunting lodge[3] on the property for purposes of recreational hunting.[4] It further found that the land on Chapman's property surrounding the driveway was heavily wooded and had not been developed

---

[3] The hunting lodge has no utilities connected.

[4] There is no evidence in the record that Patricia ever used her land for hunting.

7

for residential, agricultural, or other human use other than the rustic hunting lodge.[5]

Ultimately, the trial court concluded that Chapman's property was wild land. The trial court even noted that the land's lack of development made it ideal for hunting.

The trial court's finding was a mixed question of law and fact. After our review of the record, we find that the evidence supports the trial court's factual findings regarding the condition and use of Chapman's property. Indeed, our review of the pictures in the record reveal that the trial court's use of the term "hunting lodge" to describe the remnants of a structure on Chapman's property is generous given its dilapidated condition. We find no plain legal error in the trial court's conclusion that, in light of the condition and use of Chapman's property, the land was wild. Accordingly, because the land was wild land, the Floyds were required to establish prescriptive use of the driveway for 20 years, which they undisputedly did not do. See OCGA § 44-9-1.[6]

---

[5] In their petition, the Floyds admitted that Chapman's property "does not contain any residential or commercial structures."

[6] The facts of this case are distinguishable from *Henderson v. Cam Dev.*, 190 Ga. App. 199 (378 SE2d 495) (1989), relied upon by the Floyds. In *Henderson*, the evidence demonstrated that the land at issue had previously been cleared and developed with a house, buildings, a picnic area for members of the local community, and a barn. Id. at 200. That evidence is quite different from the evidence presented

In light of this holding, we need not determine whether the Floyds' use of the driveway actually satisfied the elements of prescriptive use. See *Norton*, 285 Ga. App. at 81-84 (2). Moreover, the Floyds' arguments concerning Chapman's notice of their use of the driveway are unavailing. It is true that, even in the absence of a recorded easement, a purchaser "will be charged with notice of the easement where an inspection of the premises would have readily revealed such physical facts as would, in the exercise of ordinary diligence, put him upon inquiry." *Mize v. McGarity*, 293 Ga. App. 714, 718 (2) (667 SE2d 695) (2008). However, such law presupposes the existence of a valid easement. As discussed above, here there is none.

2. Relying on their argument that they had a prescriptive easement for the driveway, the Floyds contend that the trial court erred in finding that they trespassed on Chapman's land. We disagree.

---

in this case that Chapman's property had been logged at some undetermined time in the past, was currently heavily wooded, contained only a sporadically used dilapidated hunting lodge constructed by Marshall Floyd, Jr. (who was not the owner of the property), and was presently utilized only for hunting – an activity which relied on the undeveloped nature of the property. Indeed, these facts are closer to those found in *Chota, Inc. v. Woodley*, 251 Ga. 678, 678-679 (309 SE2d 132) (1983), where the Supreme Court indicated without discussion that the evidence at trial demonstrated the land at issue was wild, and then described the land as containing a road which was currently overgrown, but in the past had been used by those who did not own the land for travel by mule, wagon, walking, and automobile.

Under Georgia law, "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." OCGA § 51-9-1. "The term 'property' includes not only the land possessed, but also the rights of the owner in relation to that land. The owner has the rights to possess, use and dispose of the property and the corresponding right to exclude others from using the property." (Citations omitted.) *Pope v. Pulte Home Corp.*, 246 Ga. App. 120 (1) (539 SE2d 842) (2000). "Liability for a trespass upon real property produced by a voluntary act is absolute and does not have to be grounded in negligence, so long as the act causing the trespass was intended." *Tacon v. Equity One, Inc.*, 280 Ga. App. 183, 188 (2) (633 SE2d 599) (2006).

For the reasons described in Division 1, the Floyds do not possess a prescriptive easement across Chapman's property. Consequently, Chapman had the right to exclude the Floyds from his property and the trial court did not err in finding that the Floyds' continued use of the driveway constituted a trespass.

3. Again, relying on their argument that they possessed an easement across Chapman's land, the Floyds contend that the trial court erred in enjoining their use

of the driveway on Chapman's land and in ordering them to remove their gate. We disagree.

When this Court reviews an order issuing an injunction, we review "under an abuse of discretion standard; however, where the issue decided is one of law, not fact, then the plain legal error standard of review applies." (Citation and punctuation omitted.) *Glisson v. IRHA of Loganville*, 289 Ga. App. 311, 312 (656 SE2d 924) (2008). Where a landowner faces continued trespass on his land, issuance of an injunction is proper. *Pope*, 246 Ga. App. at 120-121 (1) ("Given Pope's repeated trespasses and his threats to trespass again, the trial court did not abuse its discretion in permanently enjoining Pope from continuously trespassing upon Pulte properties."). Moreover, a trial court may issue a mandatory injunction requiring a party to remove an obstruction from a road. See *Wheatley Grading Contractors v. DFT Investments*, 244 Ga. 663, 664 (261 SE2d 614) (1979); see also *Moss v. Thomson Co.*, 212 Ga. 185 (3) (91 SE2d 485) (1956) ("the threatened and attempted erection of a fence upon the land of another so as to obstruct ingress and egress, and seriously interfere with the use, occupancy and enjoyment of the property, as alleged in the instant case, would constitute such a continuous trespass as will be enjoined.").

Here, for the reasons described in Divisions 1 and 2, the Floyds' use of the driveway was a trespass on Chapman's land. Accordingly, the trial court did not err in entering an injunction preventing the Floyds' use of the driveway or in entering a mandatory injunction requiring the Floyds to remove the gate they erected across the driveway from Chapman's property.

4. Lastly, the Floyds contend that the trial court erred in ordering them to relocate the existing underground utility traveling along the driveway or obtain Chapman's consent and grant of an easement for the lines. We agree.

Our determination on this issue requires an analysis of the easement Patricia granted to the utility company, as well as the deed between Patricia and Chapman.

> The construction, interpretation and legal effect of a contract such as an easement is an issue of law, which is subject to de novo review. The normal rules of contract construction apply, and absent ambiguity that cannot be resolved by applying the rules of contract construction, the contract remains a question of law. The first rule of contract construction is to determine the parties' intent, and if the language is clear the contract shall be enforced according to its clear terms. In fact, no construction is even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.

(Citations and punctuation omitted.) *Nat. Hills Exchange v. Thompson*, 319 Ga. App. 777, 778 (736 SE2d 480) (2013).

Here, the easement granted by Patricia to the utility company is very broad. Specifically, the easement states:

> **THE EASEMENT GRANTED TO BUILD ELECTRIC LINE TO** Marshall Floyd **KNOW ALL MEN BY THESE PRESENTS,** that I, the undersigned, Patricia Floyd, for good and valuable consideration, the receipt whereof is hereby acknowledged, do I hereby grant unto AMICALOLA ELECTRIC MEMBERSHIP CORPORATION, a cooperative Corporation, whose street address is Jasper, Georgia, and to its successors or assigns the right to enter upon the lands of the undersigned, situated in the County of Dawson, State of Georgia, and more particularly described as follows:
>
> 97.47 acres, more or less, of Land Lot No. 817, 818 + 883 in the 5th District and 1st Section of Dawson, County Georgia. This land is bounded as follows: property along Goshen Church Road
>
> on the north by _____, on the south by _____, on the east by _____, and on the west by _____.
>
> Hereby also granting the right to permit the attachment of the wires and appliances of any other company, person, or partnership, to said poles, and including the right to stretch communication wires on said poles and

13

to construct, operate, and maintain on the above described lands, and, or in, upon all streets, roads or highways abutting said lands, an electric transmission or distribution line or systems, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or systems, and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.

As stated above, Chapman's deed from Patricia stated that he took the land subject to all easements for roads and utilities in use or of record. The easement for utilities was filed on August 16, 2006, years before Chapman's purchase of the property in 2017. By its plain language, the easement is very broad and places no limitation on where the utility company could lay its lines. Accordingly, pretermitting whether the trial court had authority to require the Floyds to remove property belonging to the utility company, we find that the lines are present on Chapman's property pursuant to a valid easement and, thus, the lines do not trespass Chapman's property and no legal basis exists to order any party to remove them. For this reason, the Floyds are also not required to obtain permission from Chapman for the lines to remain on his property.[7] We are not persuaded by Chapman's argument that the

---

[7] We do not agree that the Floyds have entirely waived this argument by failing to raise it below. Although the crux of the Floyds' argument at trial was that they obtained a prescriptive easement to the driveway, they also introduced evidence of

14

power lines could only be run on his property along Goshen Church Road, because the language of the easement clearly places no such restriction on the location of the lines. Consequently, the trial court erred in ordering the Floyds to remove the utility lines or obtain an easement to keep them in place, and this portion of the trial court's order is reversed.

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Gobeil, J., concur.*

---

the utility easement at the trial. In addition, Chapman's argument that the Floyds lack standing to bring this argument is supported by no citation to authority and, thus, it will not be considered.